Myrle H. JOACHIMI, Appellant,

v.

CITY OF HOUSTON, Appellee.

No. 01–85–01046–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 19, 1986.

Anson D. Phipps, Law Office of Anson D. Phipps, Houston, for appellant.

Jerry E. Smith City Atty., Mary Madigan Dinan Asst. City Atty., Houston, for appellee.

Before EVANS, C.J., and JACK SMITH and WARREN, JJ.

WARREN, Justice.

This is an appeal from a judgment notwithstanding the verdict in a "slip and fall" case.

Appellant sued the appellee for personal injuries that she received in a fall allegedly caused by a dangerous condition in a city parking lot maintained by the appellee. In answer to special issues, the jury found that appellant suffered damages of $34,000 and found appellee to be 60% at fault and appellant 40% at fault. The trial court granted appellee's motion for judgment notwithstanding the verdict and entered a take nothing judgment. We affirm.

On appeal, appellant argues three points of error: (1) that the trial court erred in granting a j.n.o.v. because there was some evidence of probative force on all of the required issues; (2) that the trial court erred by failing to enter and sign a judgment in conformity with the jury verdict; and (3) that the trial court erred by failing to grant the appellant's motion for a trial amendment, which asked for pre-judgment interest.

At approximately 2 p.m. on Sunday, March 16, 1980, appellant parked her car in the Civic Center Garage, which is owned and operated by the appellee, and then attended an opera performance at Jones Hall. Appellant returned to her car at approximately 5:30–6:00 p.m., and as she approached the driver's door, she slipped on what looked like a light, clear substance that appeared to be oil, and fell to the pavement, sliding partially under her car. The oily substance, approximately three feet in diameter, was not present when the appellant parked her car earlier.

The appellant broke her hip as a result of the fall and had considerable difficulty getting up, even with the aid of her friends, who had accompanied her to the opera. The appellant saw no parking lot attendants in the garage either at the time she fell or afterwards.

The parking garage is an underground garage that contains three parking levels. There were at least eight or nine attendants working in the parking garage on the weekend of March 16, 1980, of whom four were cashiers who remained in the entrance booths. There was testimony that a security patrol usually walked the garage area, although one of appellee's employees testified by deposition that he could not remember whether there was any security patrol working at 5:30 p.m. to 6:00 p.m. on March 16, 1980. There was also a security patrol, consisting of one person, in a roving three-wheel power scooter. All four entrances to the garage were open to the public, and one of appellee's employees said that he knew of vandals or people coming into the garage and damaging cars. Further testimony indicated that each night the garage in question was cleaned by a night cleaning crew that would sweep the garage with power sweepers and use chemical solvents to absorb oil or slippery substances. A normal part of the routine cleaning and sweeping operation was an inspection for oil spots. The testimony showed that the cleaning crew worked five days a week, but that they would switch off so that the garage was cleaned every night.

At trial, in response to the special issues submitted, the jury answered affirmatively: (1) that there was a dangerous condition that posed an unreasonable risk of harm; (2) that the appellee did know or in the exercise of reasonable care should have known of that condition; (3) that appellee did have notice or should have had notice

within time to have afforded it a reasonable opportunity to correct the condition before the accident; (4) that appellee's failure to correct that condition was negligence; (5) that appellee's failure was a proximate cause of the appellant's fall; (6) that in falling, appellant failed to keep such a lookout for her own safety as a person using ordinary care would have kept; (7) that appellant's failure was a proximate cause of the fall; and (8) that appellant was 40% negligent and appellee was 60% negligent.

Appellant's first two points of error are argued together and assert: (1) that there was error in granting the j.n.o.v. because there was some evidence of probative force on all required issues; and (2) that there was error in the trial court's failure to enter and sign a judgment in conformity with the jury verdict.

To sustain an action by the trial court in granting a motion for judgment notwithstanding the verdict, it must be determined that there is no evidence to support the jury's findings. *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1981); *Green v. Green*, 679 S.W.2d 640, 643 (Tex.App.— Houston [1st Dist.] 1984, no writ). The appellate court must review the judgment in the light most favorable to the jury findings, considering only the evidence and inferences that support them, and rejecting the evidence and inferences that are contrary to the findings. *Williams*, 610 S.W.2d at 145. If, after this review, there exists any evidence in support of the jury findings, the judgment of the trial court must be reversed and judgment entered in accordance with the jury's verdict. *Green*, 679 S.W.2d at 643.

The Texas Supreme Court has accepted section 343 of Restatement (Second) of Torts (1965) as a statement of the duty of reasonable care that an occupier of premises owes to invitees. *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 454–55 (Tex.1972). A possessor of land is liable for physical harm to its invitees if, but only if, he:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it,[1] and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.*

When an occupier has actual or constructive knowledge of any condition on the premises that poses an unreasonable risk of harm to invitees, he has a duty to take whatever action is reasonably prudent under the circumstances to reduce or eliminate the unreasonable risk from that condition. The occupier is considered to have constructive knowledge of any premises defects or other dangerous conditions that a reasonably careful inspection would reveal. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983).

In this case, the appellant was appellee's invitee. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). Thus, appellant had the burden to prove: (1) that appellee had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to the appellant; (3) that the appellee did not exercise reasonable care to reduce or to eliminate the risk; and (4) that appellee's failure to use such care proximately caused the ap-

---

1. In later decisions, the Texas Supreme Court abolished both the negligence defense of assumption of the risk and the "no duty" doctrine. *See Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 758 (Tex.1975), and *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516–17 (Tex.1978). As a result, this part of Section 343 is no longer applicable in Texas. The invitee's knowledge and conduct are now factors the jury must weigh in determining whether the invitee was contributorily negligent, not whether the premises occupier was negligent. Although *Parker* abolished "no duty," as meaning that a plaintiff does not have to prove that he lacked knowledge and appreciation, he must still prove, however, that the defendant had a duty and breached it. *See Dixon v. Van Waters and Rogers*, 682 S.W.2d 533, 534 (Tex.1984).

pellant's personal injuries. *See Corbin,* 648 S.W.2d at 296.

Because an invitee's suit against a premises owner is a simple negligence action, the standard of care required of a premises owner/occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under the same or similar circumstances. *Id.* at 295. The occupier's liability to an invitee depends, not on whether a specific set of facts or a specific breach of duty is established, but on whether the occupier acted reasonably in light of what he knew or should have known about the risks associated with the condition on the premises. *Id.*

■ The gravamen of appellant's argument is that appellee's "lack of knowledge" of the condition on the premises, and subsequently its negligence, was based upon appellee's failure to employ sufficient numbers of employees to make a proper inspection of the premises. Had the appellee employed "sufficient numbers of persons," appellant argues, the condition of the oily substance would have been discovered, and appellee would have had enough time to remedy the condition that posed the unreasonable risk on the premises. In her brief, appellant claims that the only inference available under such circumstances is that the employee making such discovery would have waited beside the dangerous condition to warn the appellant. Therefore, appellant maintains, the actual discovery, at any time prior to appellant's fall would have provided an opportunity to correct the condition. Appellant asserts that the jury undoubtedly made such an inference in its answer to special issue three, when it answered affirmatively that appellee did have that notice or should have had notice within time to have afforded it a reasonable opportunity to correct the condition before the accident.

On the issue of proximate cause, appellant argues that appellee's failure to provide sufficient numbers of persons to inspect was a cause in fact of appellant's injuries and was foreseeable. The appellant concludes that undoubtedly the jury

made such inferences, and that such inferences are within the province of the jury, relying on *J. Weingarten, Inc. v. Brockman,* 134 Tex. 451, 135 S.W.2d 698 (1940). The court in *Brockman,* which was a slip and fall case similar to the instant case, did conclude that there was room for a legitimate inference of proximate cause in that case. 135 S.W.2d at 699. While first noting that the evidence on the whole case, particularly on proximate cause, was very meager, the court concluded that there was some evidence of negligence, i.e., the testimony of Mrs. Brockman that she did fall on the offset, and that the store manager said that she was the fifth or sixth lady who had fallen there. The court found that the testimony of Mrs. Brockman was some evidence that the offset caused her to fall. *Id.*

Appellant also relies on *Houston Natural Gas Corp. v. Pearce,* 311 S.W.2d 899, 905–06 (Tex.Civ.App.—Houston 1958, writ ref'd n.r.e.), but for the proposition previously cited in *Brockman,* 135 S.W.2d at 699, that where legitimate inferences of negligence and proximate cause can be drawn from circumstances, it then becomes a fact issue and a jury verdict on such issue will not be overturned; and also for the proposition cited in *Bock v. Fellman Dry Goods Co.,* 212 S.W. 635, 637 (Tex. Comm'n App. 1919, holding approved), that both negligence and the proximate cause of an accident may be inferred from circumstantial evidence.

In *Bock,* an inference of negligence and proximate cause could be made by the jury with little or no difficulty. Bock was a 14–year-old employee who died after falling into an open elevator shaft. The court stated that the jury might have legitimately concluded from the circumstances in evidence that the accident was due to the negligence of the defendant because the evidence suggested only two ways in which the accident could have occurred. *Bock,* 212 S.W. at 636. Either the elevator gate failed to automatically close as intended, and by reason of the dark condition of the room, the boy walked into the open shaft,

or the gate did close, and the boy slipped on the greasy floor and skidded through the open space under the bottom of the gate. *Id.* In either event, the evidence was sufficient to sustain a jury finding that the accident resulted from the defendant's failure to furnish Bock a safe work place. *Id.* "Whether the gate was up or down when he fell, the evidence was sufficient to show, in view of the fact that the floor was greasy and the room poorly lighted, that the failure to properly guard the elevator shaft was the proximate cause of the accident." *Id.* at 637.

The evidence before the courts in both *Brockman* and *Bock* was sufficient to permit a *legitimate* inference of negligence and proximate cause to be drawn from the circumstances.

A review of the evidence in the instant case reveals no evidence that appellee had actual or constructive knowledge of the oily substance on the garage floor, i.e., that appellee knew or by the exercise of reasonable care would have discovered the condition. *See Corbin,* 648 S.W.2d at 295; Restatement (Second) of Torts, sec. 343. There is no evidence that had appellee employed some unspecified, indefinite numbers of additional parking attendants, one or more of those attendants would have inspected the premises during appellant's absence and seen the oily substance, which was "definitely not motor oil," "very light clear in color," "very clear and hard to see," about three feet in diameter, between two parked cars. Appellant admits that when she arrived in the garage at 2 p.m., there was no grease or oil on the garage floor, but that the oily substance was there when she returned to the garage to get into her car between 5:30 and 6:00 p.m.

The evidence does not establish, nor permit a legitimate inference, that a dangerous condition existed a sufficient length of time to provide the appellee a reasonable opportunity to discover that dangerous condition. *See Coffee v. F.W. Woolworth Co.,* 536 S.W.2d 539, 541 (Tex.1976). The plaintiff must produce "some evidence" that the foreign substance had been on the floor a sufficient length of time to give the proprietor notice. *Id.*

Our case can be distinguished from the finding of notice in *Corbin,* 648 S.W.2d at 296. There, Safeway admitted that at the time of Corbin's fall, it knew of the unusually high risk associated with its grape display, but contended that a walk-off mat was in place at the time Corbin fell. Appellant testified that he saw no such mat. The court reasoned that because the placing of such a mat in front of the grape display was a function of general store maintenance, the jury reasonably could have inferred that Safeway, through its employees, had failed to put the mat in place and such an inference would satisfy the requirement of notice to Safeway. *Id.*

The record in our case shows that a cleaning crew, using power sweepers and cleaning agents to specifically absorb oil, cleaned the garage on a daily basis around midnight and that periodic checks were made of the premises. Appellant's own testimony indicated that the oily substance was not on the ground when she arrived and got out of her car at 2:00 p.m. A jury could not make an inference based on that evidence that the appellee failed to clean the garage and that such failure would satisfy notice to the appellee. There is no evidence from which a jury could have inferred that the appellee should have employed some unspecified greater number of parking attendants to inspect the premises, gain knowledge that an oily condition existed, and remedy the condition before appellant returned to her car. There is no evidence from which a jury could have inferred an affirmative finding in special issues two and three, that appellee did know or in the exercise of reasonable care should have known of that condition and that appellee did have that notice or should have had notice in time to have afforded it a reasonable opportunity to correct the condition before the accident.

Appellant's first and second points of error are overruled.

In her third point of error, appellant maintains that the trial court erred by fail-

ing to grant the appellant's motion for a trial amendment, which requested pre-judgment interest.

In view of our holding regarding appellant's first and second points of error, we need not consider appellant's third point of error.

Affirmed.