**GENERAL ELECTRIC COMPANY, Petitioner,**

v.

**Arthur Lee MORITZ, Respondent.**

**No. 04–0871.**

Supreme Court of Texas.

Argued Oct. 17, 2006.

Decided June 13, 2008.

---

9. Tex. Gov't Code § 311.021(5).

Steven K. Hayes, Cotten Schmidt, L.L.P., Ft. Worth, Robert D. Arredondo, Manning, Gosda & Arredondo, L.L.P., Houston, Richard E. McGary, Scheef & Stone, L.L.P., Dallas, TX, for Petitioner.

Frank G. Giunta, Teresa Ruiz Schober, Demarest, Smith & Giunta, PLLC, Dallas, Kevin J. Keith, Hiersche Hayward Drakely & Urbach, P.C., Addison, TX, for Respondant.

Justice BRISTER delivered the opinion of the Court, in which Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, and Justice WILLETT joined.

Must a landowner warn an independent contractor's employees of obvious hazards they already know about? Four times in the last ten years this Court has said the answer is "No."[1] The plaintiff in this case argues that all these cases are wrong be-cause his knowledge of the hazard is simply a factor the jury should consider in assessing comparative negligence. We agree the jury alone can decide whether he was negligent, but disagree that a jury can decide what legal duties landowners owe to independent contractors. We hold the trial court correctly found no duty here, and the court of appeals erred in reversing it.

## I. Background

Arthur Lee Moritz worked for an independent contractor that delivered General Electric parts to customers. Every day for 18 months, Moritz drove his pick-up to GE's warehouse, which had a loading dock with two large doors. Both doors were about four-and-a-half feet above the paved driveway, but only one had a concrete ramp extending down to grade level. The ramp was straight, 10 feet wide, 40 feet long, and had six-inch curbs along both edges but no guard rails. Generally, Moritz loaded supplies either by backing his truck up the ramp and into the warehouse itself, or backing up next to the door without a ramp. But on some days, he would load his truck on the ramp or outside in the driveway.

On the day Moritz was injured, both doors were blocked by GE supplies, so he parked his truck up on the ramp. Two GE employees helped him load electrical conduit into the bed of his pickup, after which Moritz alone secured the load with rachet-type straps. He then tried to add a rub-

1. *See Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 651 (Tex.2007) ("In any event, the dangers of rolling an employee about inside a concrete mixer are so obvious they cannot constitute a concealed hazard imposing on Central a duty to warn."); *Wilhelm v. Flores,* 195 S.W.3d 96, 98 (Tex.2006) ("Nor would Wilhelm, as occupier of the premises where the beehives were kept, have owed an independent contractor's employees a duty to warn them about being stung, since that danger was obvious."); *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 295 (Tex.2004) ("With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of concealed hazards the owner knows or should have known about...."); *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225 (Tex.1999) ("[T]he premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist.").

ber bungee cord, but the cord broke while he was leaning back to stretch it, causing him to fall off the ramp's side and fracture his hip, pelvis, and thumb.

Moritz sued GE and others,[2] alleging that as owners or occupiers of the premises they were liable for negligence regarding activities and premises conditions.[3] The trial court granted summary judgment for the defendants, but the court of appeals found fact questions as to both theories and reversed.[4] We address each theory in turn.

## II. The Negligent Activity Theory

■■■ Moritz alleged a negligent activity claim solely against GE. Generally, an owner or occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner.[5] But one who retains a right to control the contractor's work may be held liable for negligence in exercising that right.[6] This right to control may be expressed by contract or implied by conduct.[7]

In the summary judgment record here, there was no evidence Moritz's duties were governed by a contract. There was some evidence that in practice GE controlled where Moritz could load his truck, such as when it blocked some of his loading options. But there was no evidence it controlled how or where Moritz secured his load for delivery—the truck, straps, and rubber cords he used for that purpose were entirely his own.

Citing our opinion in *Lee Lewis Construction, Inc. v. Harrison*,[8] the court of appeals held that a fact question was created if "GE retained the right to control *any aspect* of Moritz's activities."[9] What we actually said in *Lee Lewis* (citing the Restatement of Torts and numerous opinions) was that a defendant's duty *"is commensurate with the control it retains* over the independent contractor's work."[10] Thus, it is not enough to show that the defendant controlled one aspect of Moritz's activities if his injury arose from another.[11]

Here, GE's control of where Moritz could load supplies did not dictate where

2. The other defendants were Tarrant County Limited Partnership (the owner of the warehouse) and CB Richard Ellis, Inc. (which managed the warehouse for the owner). Moritz also sued Regal Business Center, Inc., but nonsuited it before the summary judgments at issue here.

3. *See Khan*, 138 S.W.3d at 291; *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992).

4. 2004 WL 1119481.

5. *Islas*, 228 S.W.3d at 651; *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex.2006); *Khan*, 138 S.W.3d at 293; *Coastal Marine Serv. of Tex.*, 988 S.W.2d at 225; *Olivo*, 952 S.W.2d at 527.

6. *Khan*, 138 S.W.3d at 292; *accord, Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex.2001); *Redinger v. Liv-*

*ing, Inc.*, 689 S.W.2d 415, 418 (Tex.1985); RESTATEMENT (SECOND) OF TORTS § 414 (1965).

7. *Khan*, 138 S.W.3d at 293; *Dow Chem.*, 89 S.W.3d at 606; *Coastal Marine*, 988 S.W.2d at 226; *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex.1999).

8. 70 S.W.3d 778 (Tex.2001).

9. 2004 WL 1119481, at *5 (emphasis added).

10. 70 S.W.3d at 783 (emphasis added) (citing *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999); *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 355 (Tex.1998); *Redinger*, 689 S.W.2d at 418; RESTATEMENT (SECOND) OF TORTS § 414 (1965)).

11. *See Khan*, 138 S.W.3d at 294 ("[I]t is not enough to show that an oil company controlled some security activities if the ones it controlled had nothing to do with the criminal act that ultimately occurred.").

he could secure that load. While some loads undoubtedly must be secured before they are moved an inch, that was not the case here; Moritz admitted at his deposition that he could have driven off the ramp before securing this load. As an independent contractor, Moritz was free to choose whatever vehicle he wanted for deliveries, and when, where, and how he would secure his load. Thus, none of the defendants had contractual or actual control of Moritz's decision to carry loads in the back of a pick-up truck or secure them with rubber cords requiring him to use his body weight to pull them taut.

Accordingly, the court of appeals erred in finding a fact question on his negligent activity theory.

### III. The Premises Condition Theory

■ Moritz alleged a premises-condition claim against all the defendants. Generally, a landowner is liable to employees of an independent contractor only for claims arising from a pre-existing defect rather than from the contractor's work,[12] and then only if the pre-existing defect was concealed: "With respect to existing defects, an owner or occupier has a duty to inspect the premises and warn of *concealed* hazards the owner knows or should have known about."[13] Moritz's claimed defect—the absence of rails on the loading ramp—was obviously a pre-existing condition and obviously not a concealed hazard.

 Limiting premises liability to concealed hazards is not unique to cases involving independent contractors. A lessor who relinquishes possession or occupancy of premises also has no duty to warn of defects except those that are concealed.[14] In both cases, the landowner's duty is limited because control is being turned over to someone else in a way that is not true of shoppers, sightseers, or other business invitees.

 An independent contractor owes its own employees a nondelegable duty to provide them a safe place to work, safe equipment to work with, and warn them of potential hazards;[15] it also controls the details and methods of its own work, including the labor and equipment employed.[16] Thus, one who hires an inde-

**12.** *Id.* at 291; *Dow Chem.*, 89 S.W.3d at 606; *Koch Ref.*, 11 S.W.3d at 156 n. 3; *Redinger*, 689 S.W.2d at 417.

**13.** *Khan*, 138 S.W.3d at 295 (emphasis added); *accord, Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex.2007); *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex.2006); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex.1999); *Shell Chem. Co. v. Lamb*, 493 S.W.2d 742, 746 (Tex.1973); *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 446 (Tex.App.-Amarillo 1985, writ ref'd n.r.e.).

**14.** *Johnson County Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex.1996); *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 161 (Tex.1992); *Flynn v. Pan Am. Hotel Co.*, 143 Tex. 219, 183 S.W.2d 446, 448 (1944); RESTATEMENT (SECOND) OF TORTS § 358 (1965).

**15.** *See Islas*, 228 S.W.3d at 652 n. 10 (noting employers' nondelegable duties to provide safe workplace, hire competent co-employees, and provide safety regulations); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex.2006) (noting employers' duties to warn employees of hazards of employment and provide needed safety equipment or assistance); *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex.1975) ("It is well established that an employer has certain nondelegable and continuous duties to his employees. Among these are the duty to warn employees as to the hazards of their employment and to supervise their activities, the duty to furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work.").

**16.** *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex.2002).

pendent contractor generally expects the contractor to take into account any open and obvious premises defects in deciding how the work should be done, what equipment to use in doing it, and whether its workers need any warnings. Placing the duty on an independent contractor to warn its own employees or make safe open and obvious defects ensures that the party with the duty is the one with the ability to carry it out.

The dissent argues that it "makes no sense" to allocate duty in this manner because Moritz had no "control over the workplace conditions." GE may have controlled Moritz's loading options, but not where he chose to secure his load. Accordingly, it had a duty only to warn him of concealed defects he might encounter in doing his own work. The absence of handrails here was clearly not a concealed defect. If owners and occupiers have no duty to warn an independent contractor of open and obvious defects, the defendants had no duty to warn Moritz that the ramp he had been using for more than a year had no handrails.

### IV. The Duty to Independent Contractors and *Parker*

The court of appeals held the defendants still owed Moritz a duty to warn or make the ramp safe because this Court abolished all no-duty arguments in 1976 in *Parker v. Highland Park.*[17] But *Parker* does not go that far, as we explained more than 20 years ago in *Dixon v. Van Waters and Rogers.*[18]

17. 565 S.W.2d 512, 517 (Tex.1978).

18. 682 S.W.2d 533, 533–34 (Tex.1984).

19. 565 S.W.2d at 514.

20. *Id.* at 517.

In *Parker,* a landlord mis-set a timing device that turned on the lights in an enclosed stairway of an apartment building, darkening the tenants' only way down.[19] In upholding a jury verdict in a visitor's favor, we "expressly abolish[ed] the so-called no-duty concept in this case" and ordered that "[t]he reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence."[20]

But *Parker* abolished a certain kind of no-duty defense, not all duty questions whatsoever. The question in *Parker* was not whether the defendant owed the plaintiff a duty; the landlord unquestionably had a duty to provide second-floor renters some way down besides jumping. The question instead, as we explained in 1984 in *Dixon,* was whether the plaintiff had to prove she had no knowledge of the stairway's darkness as part of her case-in-chief:

The term "no-duty," as used in *Parker,* referred to the oddity that had uniquely developed in Texas to confuse negligence law. It meant that a plaintiff had the burden to negate his own knowledge and his own appreciation of a danger. The rule that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it. *A plaintiff does not have the burden to prove and obtain findings that he lacked knowledge and appreciation of a danger; he must, however, prove the defendant had a duty and breached it.*[21]

21. *Dixon,* 682 S.W.2d at 533–34 (emphasis added) (citations omitted); *cf. Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 455 (Tex. 1972) (predating *Parker* and requiring plaintiff "to prove that she did not possess actual knowledge of the danger, that she did not fully appreciate the nature and extent of the danger, and that the danger complained of

■ Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty.[22] Whether such a duty exists is a question of law for the court;[23] it is not for the jury to decide under comparative negligence or anything else. If (for example) a defendant neither owns nor occupies the premises, a jury cannot impose a duty anyway on the theory that *Parker* abolished all no-duty defenses. Every court that has analyzed *Parker* and *Dixon* together has come to this same conclusion—including courts of appeals for the First,[24] Seventh,[25] Eighth,[26] and Fourteenth Districts,[27] and the federal Fifth Circuit.[28]

We do not, as the overwrought dissent suggests, overrule *Parker*, comparative negligence, or principles of premises liability law "that govern virtually all other jurisdictions." We acknowledge that GE had a duty to exercise care with respect to matters over which it exercised control,

but it did not control where or how Moritz chose to secure his load. Unlike other invitees, independent contractors are hired for special projects that often entail special expertise,[29] and can be expected to use whatever equipment or precautions are necessary so long as a hazard is not concealed. If Moritz wanted to use bungee cords and lean over backwards, that was his business; but he could not require GE to keep him safe no matter how he chose to do his own work.

Nor has it been "settled in our state for more than thirty years" that someone besides Moritz's employer must owe him a duty here. We expressly rejected any such duty forty years ago. Before then, we had held in the 1920s in *Galveston–Houston Elec. Ry. Co. v. Reinle* that a premises owner had to warn employees of an independent contractor of a hazard even if the employee already knew about it.[30] But in 1967, Chief Justice Calvert

was not so open and obvious as to charge her, as a matter of law, with such knowledge and appreciation").

**22.** *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex.2001) ("The plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach."); *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex.1976) ("[A]ny plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability.").

**23.** *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 663 (Tex.1999); *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998).

**24.** *Joachimi v. City of Houston*, 712 S.W.2d 861, 863 n. 1 (Tex.App.-Houston [1st Dist.] 1986, no pet.).

**25.** *Bryant v. Gulf Oil Corp.*, 694 S.W.2d 443, 445 (Tex.App.-Amarillo 1985, writ ref'd n.r.e.).

**26.** *Delgado v. Houghston*, No. 08–99–00044–CV, 2000 WL 678774, at *5 n. 2 (Tex.App.-El Paso May 25, 2000, no pet.).

**27.** *Bill's Dollar Store, Inc. v. Bean*, 77 S.W.3d 367, 370 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). *But cf. Wilson v. Braeburn Presbyterian Church*, 244 S.W.3d 469, 472 (Tex.App.-Houston [14 Dist.] 2007, pet. filed) (Yates, J., concurring) ("Admittedly, it may seem awkward to require an invitor who has not made a condition safe to warn an invitee of that danger even if the invitee is already aware. However, that result is dictated by *Parker....* ").

**28.** *See Thomas v. Internorth, Inc.*, 790 F.2d 1253, 1256 (5th Cir.1986).

**29.** *See Anchor Cas. Co. v. Hartsfield*, 390 S.W.2d 469, 471 (Tex.1965); *Pitchfork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 603 (1961).

**30.** 113 Tex. 456, 258 S.W. 803, 806 (1924).

writing for this Court expressly overruled that decision:

> *Reinle* must either be followed or overruled. With due respect for the rule of stare decisis, we are convinced that the rule of *Reinle* imposes an unfair and, indeed, an intolerable burden on an owner or occupier of land who employs an independent contractor to do work or to perform services on the premises. While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees.[31]

This rule, repeated frequently and as recently as 2007, has never been abrogated—impliedly or otherwise—as the dissent asserts.

▮▮ Nor is analysis of a defendant's duty "no different" from analysis of a plaintiff's negligence. It is true that when a hazard is obvious, the plaintiff will usually know about it. But that does not mean the plaintiff is negligent, as some like Ms. Parker must encounter a hazard because they have no other choice.[32] By contrast, duty depends on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant.[33] Those factors are not necessarily the same for shoppers, deliverymen, or independent contractors who

perform their own work with their own equipment in their own way. It was because of those factors that we adopted the rule limiting landowner liability to independent contractors in 1967; the dissent addresses none of them in urging that we change that duty today, instead simply pointing to *Parker*, a case that did not involve independent contractors at all. The distinctions drawn in the law may not always be easy, but we decline the dissent's suggestion that we simplify them by mashing them all together.

* * *

▮▮ When a defendant hires an independent contractor to come on premises and perform work as it sees fit, the defendant may reasonably expect the contractor to instruct its own employees on the safe means and manner of doing so. Regardless of whether Moritz acted prudently, the defendants had no duty to warn him that the ramp he used daily had no handrails. Accordingly, we reverse the court of appeals' judgment and render a take-nothing judgment in favor of the defendants.

Justice GREEN filed a dissenting opinion, in which Chief Justice JEFFERSON and Justice JOHNSON joined.

JUSTICE O'NEILL did not participate in the decision.

Justice GREEN, joined by Chief Justice JEFFERSON and Justice JOHNSON, dissenting.

The Court today abandons long-standing principles of premises liability law in its

---

**31.** *Delhi–Taylor Oil Corp. v. Henry,* 416 S.W.2d 390, 394 (Tex.1967).

**32.** *See Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 336 (Tex.1998) ("Similarly, this Court has indicated that the fact that a danger is open and obvious (and thus need not be warned against) does not preclude a

finding of product defect when a safer, reasonable alternative design exists."); *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 520 (Tex.1978).

**33.** *Edward D. Jones & Co. v. Fletcher,* 975 S.W.2d 539, 544 (Tex.1998).

effort to shield landowners and occupiers from liability for known premises defects. In doing so, the Court articulates an exceptional no-duty rule for the premises liability claims of independent contractors' employees, but then fails to adhere to it. According to the Court, the existence of a premises owner's duty in these cases ought to be governed by the general idea that an independent contractor is empowered to do whatever is necessary to carry out work in a safe manner, and that the duty of care should therefore fall on the employer rather than on the premises owner. 257 S.W.3d at 215. Placing the duty on the independent contractor makes sense when the independent contractor is given control over the workplace conditions, but it makes no sense at all when, as here, the independent contractor lacks that control. The Court purports to recognize the difference,[1] but refuses to draw the distinction. Moreover, the practical effect of the Court's holding is to overrule *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978), and improvidently reintroduce the discredited no-duty concept back into Texas premises liability jurisprudence. This outcome conflicts not just with our own settled law, but also with comparative liability principles that govern virtually all other jurisdictions. Contrary to the Court, I would follow *Parker* and hold that the court of appeals correctly remanded Arthur Moritz's premises defect claim for trial. Accordingly, I respectfully dissent.

## I

Moritz's status as an independent contractor does not relieve the premises owner of the duty to warn of premises defects. General Electric Company contracted with Moritz's employer to pick up electrical supplies at GE's warehouse for delivery to GE's customers. But Moritz had no control—contractual or otherwise—over the condition of his work environment at the GE warehouse; control over the warehouse premises was retained by GE and/or Tarrant County Limited Partnership (TCLP) and CB Richard Ellis, Inc.[2] While Moritz was allowed to use the warehouse ramp for loading supplies on his truck, he had no authority to alter the premises conditions, and thus could not require that guard rails be placed along the ramp for his safety. Moritz controlled only the specific location and manner in which he loaded his truck. Moritz's circumstances at the warehouse, therefore, were little different from the ordinary grocery shopper to which the Court alludes while trying to make the opposite point, 257 S.W.3d at 215. Except that one had a wholesale as opposed to a retail purpose, the status of each was functionally the same. And while it is well established that a grocery store owner owes its invitee shopper a duty of care, even for open and obvious defects, the Court today says that no one owes Moritz a similar duty, solely because of his independent contractor status. This

---

1. 257 S.W.3d at 215 ("[T]he landowner's duty is limited because control is being turned over to someone else in a way that is not true of shoppers, sightseers, or other business invitees.").

2. In the trial court summary judgment proceedings, TCLP and Ellis argued that they owed Moritz no duty under the premises defect claim because they did not control the ramp conditions. Because of the Court's disposition, it does not reach this issue. I would

hold that the trial court should have denied TCLP and Ellis's motion for summary judgment on the issue of control because TCLP owns both the warehouse structure and the surrounding outdoor premises, and because the lease provisions between GE and TCLP do not, as a matter of law, relinquish TCLP and Ellis's control over the ramp's condition. But for the sake of simplicity throughout the remainder of this opinion, I refer to GE, TCLP, and Ellis collectively as GE.

unlikely outcome conflicts with principles that have been settled in our state for more than thirty years.

We have long recognized that the essential test for assigning duty in premises liability cases is the determination of who has control of the premises. *See Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 791–92 (Tex.2006); *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 294 (Tex.2004); *Dow Chem. Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002); *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 783 (Tex.2001); *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999) (per curiam); *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803–04 (Tex. 1999); *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225–26 (Tex. 1999) (per curiam); *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 355–57 (Tex.1998) (per curiam); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex.1997); *Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 23 (Tex.1993); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417–18 (Tex.1985). Absent control over the premises, no duty to warn or make safe arises with respect to any dangerous premises condition, but where the landowner controls the premises, the level of control defines the contours of the duty. *See, e.g., Redinger,* 689 S.W.2d at 417–18. Just as the control requirement informs negligent activity liability, it also explains duty in premises defect cases. *See Olivo,* 952 S.W.2d at 528 ("For the general contractor to be liable for negligence, its supervisory control must relate to the condition or activity that caused the injury."). Thus, in slip-and-fall cases, store owners with control over dangerous floor conditions owe a commensurate duty to their shopper customers. *See Brookshire Grocery Co. v. Taylor,* 222 S.W.3d 406, 407–08 (Tex.2006); *Wal–Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 813–14 (Tex.2002); *Hernandez v. Kroger Co.,* 711 S.W.2d 3, 4 (Tex.1986) (per curiam); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex. 1983). Considering all of this, it is difficult to see why the Court would treat Moritz differently.

The Court says that Moritz's status as an independent contractor is the determining factor. But if duty in these kinds of cases is to be determined on the basis of the plaintiff's employment status, then the rule must also apply to the shopper who buys groceries for his disabled employer, or the FedEx employee who delivers a package to the grocery store manager. These are independent contractors just like Moritz, but under the Court's rule, the store owner owes a duty only to the shopper who shops for himself, but not to the independent contractor who walks the same aisles in the same way. The Court's attempt to explain this troubling dichotomy falls short.

The Court uses independent contractor status as a proxy for what really matters: control over the premises condition. As it explains, "[p]lacing the duty on an independent contractor to warn its own employees or make safe open and obvious defects ensures that the party with the duty is *the one with the ability to carry it out.*" 257 S.W.3d at 214 (emphasis added). The Court justifies this blanket rule for independent contractors by assuming that all independent contractors are given control over all aspects of their work. Independent contractor status as a substitute for control fails in Moritz's case because the underlying assumption is plainly wrong. Some independent contractors are given control over the premises on which they work, and in those cases the premises owner's duties may be relieved. But not all independent contractors are given the requisite control, and when they are not— as in the case of Moritz and the FedEx

deliveryman—the rationale for relieving the owner's duty disappears entirely.[3]

Moreover, contrary to the Court's assertion, *id.* at 214, GE's control over Moritz's *activity* does not govern Moritz's *premises defect* claim. By definition, a premises defect claim requires control over the allegedly dangerous condition. *E.g., Redinger,* 689 S.W.2d at 417. That is why the commensurate duties relate not to the plaintiff's *activity,* but to the defendant's *property*—the premises owner owes invitees a duty to warn of dangerous property conditions; there is no duty to warn invitees against their own dangerous activities. *See State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996) (per curiam). In light of our insistence that negligent activity and premises defect claims be evaluated independently, *see, e.g., Olivo,* 952 S.W.2d at 527–30, the Court's use of negligent activity arguments in a premises defect claim fails to survive close scrutiny.

Rather than cling to false distinctions based on independent contractor status or control over Moritz's activities, the way to resolve this case is to determine who actually had control over the premises condition. Neither Moritz nor his employer had control over the premises condition that resulted in Moritz's injury. Moritz could not change the condition of the ramp, only GE could. As a result, GE owed a duty to either warn Moritz of the dangerous premises condition or to make it safe.

## II

The Court's other reason for shielding the premises owner from liability is its assertion that premises owners owe duties only with respect to concealed defects. 257 S.W.3d at 215. *Parker v. Highland Park, Inc.* explicitly confronted the no-

duty argument that the Court today applies:

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he should know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof.

565 S.W.2d 512, 516 (1978) (quoting *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 378 (Tex.1963)) (citations omitted). After full consideration of the no-duty jurisprudence, both in theory and in practice, *Parker* abolished it:

> We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley,* "henceforth in the trial of all actions based on negligence...." The reasonableness of an actor's conduct under the circumstances

---

3. The Court's blanket assumption that *all* independent contractors are "special expert[s]" in every subject that may present a premises

liability claim is similarly unsupported. *See* 257 S.W.3d at 217.

will be determined under principles of contributory negligence. While this case arose prior to the adoption of the comparative negligence statute, in the trial of cases under that statute, one who is contributorily negligent is still entitled to have his negligence compared with that of the other participants in the event.

. . . .

There are many instances in which a person of ordinary prudence may prudently take a risk about which he knows, or has been warned about, or that is open and obvious to him. His conduct under those circumstances is a matter which bears upon his own contributory negligence. . . .

. . . .

A plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty.

*Id.* at 517–21 (quoting *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.1975)). Of key importance to *Parker* was the Legislature's adoption of the comparative negligence scheme:

> The legislature by its adoption in 1973 of the comparative negligence statute evidenced a clear policy purpose to apportion negligence according to the fault of the actors. That system replaced the harsh system of absolute victory or total defeat of an action by such doctrines as contributory negligence, voluntary assumption of risk, and also the included doctrine known as no-duty. . . . The survival of no-duty (plaintiff's knowledge and appreciation) as a total bar is incom-

patible with the legislative purpose of the comparative negligence statute.

*Id.* at 518 (citations omitted); *see also Farley,* 529 S.W.2d at 758 ("[T]he Legislature has now adopted comparative negligence and thus evidenced its clear intention to apportion negligence rather than completely bar recovery."). Because comparative negligence still governs torts in Texas, *see* Tex. Civ. Prac. & Rem.Code ch. 33, this case should be simple. GE does not dispute that the ramp is dangerous, and summary judgment evidence from GE's warehouse manager indicated that persons in Mortiz's position were likely to be injured despite the obviousness of the ramp's condition. As a result, the question of whether or not the warehouse ramp's condition was concealed plays no part in the question of duty. If, in fact, the ramp's defect was "open and obvious," that condition could be weighed against Moritz only on the question of comparative negligence.

Concluding otherwise, the Court today resurrects what *Parker* abolished by simply changing the question. That is, when the answer to "Was the defect concealed?" is "No," the answer to "Did the plaintiff know/Should the plaintiff have known of the defect?" will *always* be "Yes." [4] The Court's reasoning essentially overrules *Parker* by reducing its holding to a requirement that, in determining duty, courts ask the former question instead of the latter. But this cannot be because *Parker* removed *both* of those questions from duty analysis. The no-duty doctrine said that "if there are open and obvious dangers of which the invitees know, *or of which they are charged with knowledge,* then the occupier owes them 'no duty' to

---

**4.** *Cf.* Restatement (Second) of Torts § 289 & cmt. e (1965) ("The actor must exercise the perception of a reasonable man under like circumstances. This means that he must to a reasonable degree make use of his senses to become aware of his surroundings, and of any danger involved in them."); *see also id.* § 464.

warn or to protect the invitees," and *Parker* "expressly abolish[ed] the so-called no-duty concept." 565 S.W.2d at 516–17 (emphasis added). The Court cannot avoid this result by framing the question as one of law, 257 S.W.3d at 216, because when the Court decides that a condition's obviousness means no duty, its inquiry is no different than what a jury would do when deciding whether Moritz was himself negligent. In both instances, Moritz is faulted because he was aware of the condition of the property and encountered it anyway. Under *Parker* and the comparative negligence scheme, that fault question is no longer a part of the duty analysis.

In an attempt to determine what *Parker* left behind after abolishing the no-duty doctrine, the Court misinterprets *Dixon v. Van Waters & Rogers,* 682 S.W.2d 533 (Tex.1984) (per curiam). *See* 257 S.W.3d at 216–17 & nn. 21–28. To be sure, *Dixon* was correct when it said that *Parker's* "rule that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it." *Dixon,* 682 S.W.2d at 533–34. But *Parker* itself made clear what part of duty a plaintiff must still prove:

> These authorities dispel the idea that anything that can be seen precludes recovery because it is open and obvious. For these reasons an open and obvious condition should not be confused with the plaintiff's *initial and separate burden to prove knowledge of danger on the part of the owner.*

565 S.W.2d at 520–21 (quoting *Camp v. J.H. Kirkpatrick Co.,* 250 S.W.2d 413, 417–

18 (Tex.Civ.App.-San Antonio 1952, writ ref'd n.r.e.)) (emphasis added). *Dixon* neither said nor implied that duty depends on concealment. *See Dixon,* 682 S.W.2d at 533–34. The same is true for all of the court of appeals opinions cited by the Court, which merely say that a plaintiff must prove the existence of a duty, not that duty depends on concealment. *See Bill's Dollar Store, Inc. v. Bean,* 77 S.W.3d 367, 370 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) ("The *Parker* court abolished the additional requirement [of proving the absence of his own subjective knowledge and appreciation of any danger], but, contrary to appellee's assertion, did not change the underlying obligation to establish a duty on the part of a defendant and a violation of that duty."); *Delgado v. Houghston,* No. 08–99–00044–CV, 2000 WL 678774, at *5 (Tex.App.-El Paso May 25, 2000, no pet.) (not designated for publication); *Joachimi v. City of Houston,* 712 S.W.2d 861, 863 n. 1 (Tex.App.-Houston [1st Dist.] 1986, no writ) ("Although *Parker* abolished 'no duty,' as meaning that a plaintiff does not have to prove that he lacked knowledge and appreciation, he must still prove, however, that the defendant had a duty and breached it."); *Bryant v. Gulf Oil Corp.,* 694 S.W.2d 443, 445 (Tex.App.-Amarillo 1985, writ ref'd n.r.e.) ("The *Parker* court abolished the additional requirement but did not change the underlying obligation to establish a duty on the part of a defendant and a violation of that duty."); *Thomas v. Internorth, Inc.,* 790 F.2d 1253, 1256 (5th Cir. 1986) ("The abrogation of the no-duty rule does not relieve a plaintiff from proving that the defendant had a duty and breached it.").[5]

---

**5.** The Restatement likewise demonstrates that the Court misapprehends what *Parker* left intact as a complete bar to a plaintiff's recovery. Immediately after explaining that a plaintiff's negligence cannot completely bar recovery,

the Restatement—just like *Dixon*—clarifies what remains:

> Under comparative responsibility, most courts merge several defenses into plaintiff's negligence, such as implied assump-

Contrary to the Court's suggestion, *see* 257 S.W.3d at 213 & n. 1, we have remained consistent with the rule in *Parker*, with one possible exception. *Islas, Khan,* and *Lawrence* concluded that there was no duty for reasons unrelated to concealment. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex.2007) (no duty because of no control over the allegedly negligent activity); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295–98 (Tex.2004) (no duty because of no control over the allegedly defective premises); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225–26 (Tex.1999) (per curiam) (no duty because of no control over the allegedly negligent activity). Only *Wilhelm v. Flores* would appear to be in conflict with *Parker*, but it was never argued as a premises liability case, and was decided with neither citation to *Parker* nor discussion of the apparent conflict. 195 S.W.3d 96, 98 (Tex.2006) (per curiam). We should continue to adhere to *Parker's* comprehensive and explicit review of first principles.[6]

The Court's employment of *Delhi–Taylor Oil Corp. v. Henry*, 416 S.W.2d 390 (Tex.1967), 257 S.W.3d at 218, is also puzzling because its authority has been largely, if not completely, abrogated by the enactment of the comparative liability statute and by *Parker*, a later decided case. The Court's error begins by misstating the meaning of *Delhi–Taylor*, arguing that it stands for the proposition that no one "besides Moritz's employer must owe him a duty here." 257 S.W.3d at 217. This is simply not accurate. *Delhi–Taylor* was not about whether a duty was owed. In that case, the defendants did not dispute that they owed a duty to warn about dangerous gas lines; the question was whether warnings to both the independent contractor and its employees were required, or whether that duty could be discharged by warning only the independent contractor. *Delhi–Taylor*, 416 S.W.2d at 392. The "unfair" and "intolerable" burden cited by the Court was not simply the burden of a duty to warn, but the burden of having to warn both the independent contractor and every one of the independent contractor's employees. *Id.* at 394 ("[T]here is no sound basis for requiring that the employees should be *twice* warned." (emphasis added)). In short, *Delhi–Taylor's* holding, to the extent that it retains any viability, is limited to the scope of an existing duty to warn and, of course, that has no application to this case, which focuses entirely on whether the landowner had a duty to warn at all. *Id.* at 392–94. It should also be noted that *Delhi–Taylor* is not relevant to the open and obvious question because the premises defect in that case was concealed. *Id.* at 394. And even if the issue in this case were the adequacy of GE's warning—which it is not—GE's defense would fail under *Delhi–Taylor* because GE warned neither Moritz nor his employer.

But to the extent that *Delhi–Taylor* can be viewed as supporting an open and obvious limitation, it was overruled by *Parker*. In its discussion of duty, the existence of

---

tion of the risk, avoidable consequences, and mitigation of damages. *See* § 3, Comments *b, c; Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984). These defenses are based on the factfinder's evaluation of the reasonableness of the plaintiff's conduct. Other defenses—such as contractual assumption of risk, immunity, privilege, statute of limitation, and certain statutory defenses under the Uniform Commercial Code—are based on other policy consider-ations. No reported decision has applied them as a percentage reduction. They continue to constitute an absolute bar to recovery.

RESTATEMENT (THIRD) OF TORTS: APPORTIONMENT OF LIABILITY § 7 cmt. k (2000).

6. *See Planned Parenthood of Se. Pa. v. Casey,* 505 U.S. 833, 854–55, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

which no one disputed, *Delhi–Taylor* cited six Texas cases, every one of which was part of the no-duty jurisprudence that has now been abolished. *Id.* at 392, 394.[7] After *Farley* and *Parker*, not a single Texas court has cited *Delhi–Taylor* in support of the Court's position.[8] And despite *Farley* and *Parker's* unequivocal language, the Court steadfastly refuses to recognize that any open and obvious limitation in *Delhi–Taylor* was abolished by the Legislature's adoption of comparative negligence.[9]

Admonishing against too much reliance on *Parker*, the Court further argues that "duty depends on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on contributorily negligent, not whether the premises occupier was negligent.").

7. *Halepeska*, 371 S.W.2d 368, was expressly abrogated by *Parker*, 565 S.W.2d at 516, 519. *See Dillon v. Wal–Mart Stores, Inc.*, No. 97–20613, 1998 WL 723835, at *1 (5th Cir. Oct.5, 1998) (recognizing abrogation). *Robert E. McKee, General Contractor, Inc. v. Patterson*, 153 Tex. 517, 271 S.W.2d 391 (1954), was also expressly abrogated by *Parker*, 565 S.W.2d at 513, 516–19. *See EDCO Prod., Inc. v. Hernandez*, 794 S.W.2d 69, 75 (Tex. App.-San Antonio 1990, writ denied) (recognizing abrogation). *Western Auto Supply Co. v. Campbell*, 373 S.W.2d 735 (Tex.1963), merely followed *Halepeska* and *McKee*, and *Hall v. Medical Building of Houston*, 151 Tex. 425, 251 S.W.2d 497 (1952), was *McKee's* predecessor. *Tyler v. McDaniel*, 386 S.W.2d 552 (Tex.Civ.App.-Dallas 1965, writ ref'd n.r.e.), was abrogated by *Farley*, 529 S.W.2d at 758. *Texas Electric Service Co. v. Holt*, 249 S.W.2d 662 (Tex.Civ.App.-Fort Worth 1952, writ ref' d n.r.e.), has no conclusion on any issue relevant to *Delhi–Taylor*. *See id.* at 668 ("We hold that the deceased employee of the independent contractor was not an invitee or licensee of appellant for the purpose of hanging this fuse at the time and place in question."). Thirty years have passed since any Texas court has cited *Campbell*, *Hall*, *Tyler*, or *Holt* favorably in a premises liability case.

8. To the contrary, at least three courts of appeals have expressly recognized that *Parker* had this effect on *Delhi–Taylor*. *Union Carbide Corp. v. Burton*, 618 S.W.2d 410, 414 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Baca v. Sand, Inc.*, 600 S.W.2d 840, 843 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Schley v. Structural Metals, Inc.*, 595 S.W.2d 572, 579–82 (Tex. Civ.App.-Waco 1979, writ ref' d n.r.e.); *see Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 298 (Tex.1983) ("The invitee's knowledge and conduct are now factors the jury must weigh in determining whether the invitee was

9. The courts of appeals have not hesitated to apply *Parker* to cases involving independent contractors, and for good reason. The court in *Schley* explained the perverse incentives that the Court's interpretation creates:

> To hold that the *Delhi–Taylor* doctrine survived *Parker* would result in the following incongruity: The injured workman who confronted an open and obvious hazard or one of which he had personal knowledge would not automatically be barred from recovery; he would be able to go to the jury under principles of contributory negligence. However, the injured workman who did not have personal knowledge of the dangerous condition by warning or by other circumstance would be barred from recovery by the fact that his employer knew of the condition. The landowner who personally warned the injured workman of the dangerous condition or who had a dangerous condition on his premises that was open and obvious would not automatically be entitled on those facts to a defense verdict, but if the landowner did nothing and the workman's employer happened to know of the dangerous condition, or if the landowner warned only the workman's supervisor, the landowner would be entitled to a complete defense verdict. The landowner who warned one supervisor would fare better than one who warned each individual workman but no supervisors. We cannot believe the Parker decision was intended to create a set of rules whereby knowledge of a dangerous condition by supervisory personnel of the injured workman would bar recovery, but personal knowledge by the workman would not; and it is our view that the *Delhi–Taylor* rule was necessarily set aside by *Parker*.
>
> 595 S.W.2d at 581–82 (citations omitted).

the defendant." 257 S.W.3d at 218. Yet the Court fails to engage in the balancing that it claims is mandatory. More importantly, it fails to recognize that the balancing need not be done anew in every premises defect case because it has already been accomplished by the scores of common law decisions in our courts. That balancing produced not just *Parker*, but a consistent line of cases recognizing that the various permutations of plaintiff's negligence are no longer a part of duty. *See French v. Grigsby*, 571 S.W.2d 867 (Tex. 1978) (per curiam) (rejecting last clear chance as an absolute defense in favor of comparative negligence); *Davila v. Sanders*, 557 S.W.2d 770, 771 (Tex.1977) (per curiam) (rejecting imminent peril as an absolute defense in favor of comparative negligence); *Farley*, 529 S.W.2d at 758–59 (rejecting voluntary assumption of risk as an absolute defense in favor of comparative negligence). No "mashing" of laws has occurred. *See* 257 S.W.3d at 218. As the Court noted just last year, our decisions have simply "rejected similar efforts to compartmentalize negligence in rigid categories" and "discarded categories like imminent-peril, last-clear-chance, and assumption-of-the-risk in favor of a general submission of comparative negligence." *Jackson v. Axelrad*, 221 S.W.3d 650, 654 (Tex.2007). While the plaintiff's negligence could ultimately prohibit recovery when compared to the defendant's negligence, it will not defeat the claim at the duty stage of a lawsuit. When properly read, our cases compel the conclusion that Moritz's appreciation of the ramp's danger does not extinguish GE's duty.

### III

Comparative negligence is not rare, and as one of forty-six states to adopt the doctrine, we benefit from a wealth of decisions addressing the question before us today. *See* RESTATEMENT (THIRD) OF TORTS:

APPORTIONMENT OF LIABILITY § 7 cmt. a (2000). Yet the Court's decision conflicts with the principles that are settled in nearly every other jurisdiction, the most fundamental of which assigns the comparative fault determination to the finder of fact, not the court:

> § 7. Effect of Plaintiff's Negligence When Plaintiff Suffers an Indivisible Injury
>
> Plaintiff's negligence ... that is the legal cause of an indivisible injury to the plaintiff reduces the plaintiff's recovery in proportion to the share of responsibility *the factfinder assigns* to the plaintiff. . . .

*Id.* § 7 (emphasis added). Never does the Restatement distinguish duties by identifying independent contractors. Instead, the duty rule for obvious premises defect cases is based on foreseeability and danger:

> A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

RESTATEMENT (SECOND) OF TORTS § 343A (1965). The section's comment explains the rule much like *Parker* did:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect

that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

*Id.* § 343A cmt. f (citations omitted). GE does not contest the danger posed by the ramp, and it does not contend that Moritz's fall and injury were not forseeable results of the ramp's lack of a guard rail. GE's only argument is that the obviousness of the premises condition prevents any duty from arising. The Restatement defeats that argument, as its most analogous illustration demonstrates:

The A Drug Store has a soda fountain on a platform raised six inches above the floor. The condition is visible and quite obvious. B, a customer, discovers the condition when she ascends the platform and sits down on a stool to buy some ice cream. When she has finished, she forgets the condition, misses her step, falls, and is injured. If it is found that this could reasonably be anticipated by A, A is subject to liability to B.

*Id.* § 343A cmt. f, illus. 3. This case easily fits that illustration.

The Court's holding today conflicts with our premises liability jurisprudence, the careful deliberations of the drafters of the Restatement, and the modern formulation of comparative liability.[10] If *Parker* and our comparative liability scheme did not align so well with other jurisdictions and authorities, this case might present a more challenging question. But when our jurisprudence is in accord with the great weight of authority, the conclusion is clear: The premises owner/occupier in this case owed a duty of care to Moritz, regardless of his awareness of the danger posed by the ramp.

**IV**

I agree with the Court's disposition of Moritz's negligent activity claim, which was directed solely at GE. GE did not control Moritz's activities in securing the load on his truck, and GE thus cannot be held liable for Moritz's resulting injuries. But Moritz's petition alleged that GE knew or should have known that the absence of guard rails created an unsafe and unreasonably dangerous condition. Neither motion for summary judgment challenged

**10.** *See* Ernest H. Schopler, Annotation, *Modern Status of the Rule Absolving a Possessor of Land of Liability to Those Coming thereon for Harm Caused by Dangerous Physical Conditions of which the Injured Party Knew and Realized the Risk,* 35 A.L.R.3d 230 (1971 & Supp.2008); 1 *Texas Torts & Remedies* 20.05[2][a] (J. Hadley Edgar Jr. & James B. Sales, eds.2008); 4 Fowler V. Harper, Fleming James, Jr. & Oscar S. Gray, *Harper, James and Gray on Torts* §§ 21.1–.2, 21.5, 21.8 (3d ed.2007); 5 *id.* § 27.13; 3 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* §§ 13.35, 14.6 (1986 & Supp.2001); W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 61 (5th ed., Lawyer's ed.1984).

those allegations, and no party argues otherwise here. As a result, I would hold that the trial court should not have granted summary judgment on any form of the defendants' no-duty argument. I therefore dissent from the Court's judgment because it fails to affirm the court of appeals judgment remanding the premises defect claim for trial.