Ryan **LOPEZ**, Appellant

v.

**ENSIGN U.S. SOUTHERN DRILLING, LLC and Freeport–McMoran Oil & Gas, LLC d/b/a Plains Exploration & Production Company, Appellees**

NO. 14–15–00872–CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed March 21, 2017

---

Timothy A. Hootman, Houston, TX, for appellant.

Walter Joseph Gallant, Robert L. Buford, Houston, TX, for appellees.

Panel consists of Justices Jamison, Wise, and Jewell.

## OPINION

Kevin Jewell, Justice

Appellant Ryan Lopez sought damages from Freeport–McMoRan Oil & Gas, LLC d/b/a Plains Exploration & Production Company, and Ensign U.S. Southern Drilling, LLC, for personal injuries sustained when he fell down a stairway on a drilling rig. Both Freeport–McMoRan and Ensign filed motions for summary judgment, which the trial court granted. On appeal, Lopez contends that neither defendant is entitled to summary judgment. We affirm because the summary judgment evidence conclusively establishes appellees' entitlement to judgment as a matter of law on Lopez's premises liability claim.

## Background

Freeport–McMoRan owned and operated the Charlotte #3H Well in Karnes County, Texas (the "Well"). Freeport–McMoRan contracted with Ensign to provide the Ensign 155 drilling rig (the "Rig") to drill the Well.

Separately, Freeport–McMoRan contracted with Stratagraph, Inc. to provide mud logging services, which were support services necessary to drill the Well. The Master Service Contract between Freeport–McMoRan and Stratagraph recognized Stratagraph as an independent contractor, responsible for the supervision and control of its employees. Ensign had no contractual relationship with Stratagraph.

Stratagraph employed Lopez as a mud logger. Lopez was assigned to work from May 2012 to July 2012, during which time he worked the night shift—from 6:00 p.m. to 6:00 a.m. As a mud logger, Lopez's duties generally entailed analyzing samples of drill cuttings collected at regular intervals. To collect the drill cuttings, Lopez would traverse a stairway on the Rig to access the shale shaker and collect the samples. He would then return to a Stratagraph trailer on site, which was located next to the Rig opposite the shale shaker, where he analyzed the cuttings. Lopez reported his findings to Freeport–McMoRan.

During his shift on July 1, Lopez was injured when he fell down a stairway on the Rig. As Lopez was returning to the Stratagraph trailer after collecting a drill cutting, he fell when his hand slipped through a gap in the handrail on one side of the stairway. The stairway did not have a handrail on both sides.

Lopez filed suit against Freeport–McMoRan and Ensign for personal injuries sustained in the fall. In his initial petition, Lopez asserted a negligence cause of action. He later filed an amended petition, in which he re-asserted an ordinary negligence claim but also added a premises liability cause of action in the alternative.[1]

Freeport–McMoRan filed a traditional and no evidence motion for summary judgment. Tex. R. Civ. P. 166a(c), (i). As relevant here, Freeport–McMoRan asserted three general arguments in the motion.

---

1. Seabright Insurance Company intervened in Lopez's lawsuit seeking recovery of workers' compensation benefits paid. Seabright subsequently nonsuited its claims.

First, it argued that Lopez's cause of action sounded in premises liability only, as opposed to ordinary negligence, because his alleged injury arose from a condition on the premises as opposed to a negligently performed activity.[2] Second, it contended that Texas Civil Practice and Remedies Code Chapter 95 applied and compelled judgment for Freeport–McMoRan because Lopez could not meet the required elements of proof under that statute. Tex. Civ. Prac. & Rem. Code §§ 95.001–.004 (applicable to negligence claims asserted by independent contractors' employees brought against a property owner). Third, in the event Chapter 95 did not apply, Lopez's common law premises liability claim failed because Freeport–McMoRan had no duty to warn him of the gap in the handrail, which was not concealed.

Ensign also filed a no evidence and traditional motion for summary judgment. In the no evidence portion of its motion, Ensign argued that Lopez had no evidence of each required element of a premises liability theory, and that Ensign owed no duty to Lopez. In its traditional motion, Ensign asserted, like Freeport–McMoRan, that it owed no duty to warn because the gap in the handrail was not concealed.

The trial court granted summary judgment to both Freeport–McMoRan and Ensign without specifying the grounds on which it relied. This appeal followed.

## Standard of Review

We review the trial court's grant of summary judgment de novo. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, accepting all reasonable inferences therefrom, and resolving doubt in the nonmovant's favor. Joe v. Two Thir-

ty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004).

Regarding traditional summary judgment, the movant has the burden to show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Joe, 145 S.W.3d at 157. If the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. Ballard v. Arch Ins. Co., 478 S.W.3d 950, 953 (Tex. App.–Houston [14th Dist.] 2015, no pet.).

In a no evidence motion for summary judgment, a party may move for summary judgment on the ground that there is no evidence as to one or more elements essential to a claim or defense on which the adverse party bears the burden of proof. Tex. R. Civ. P. 166a(i). To avoid summary judgment, the nonmovant must present evidence raising a genuine issue of material fact supporting each element contested in the motion. Tex. R. Civ. P. 166a(i); Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).

We do not consider as grounds for reversal issues not expressly presented to the trial court in response to a summary judgment motion. Tex. R. Civ. P. 166a(c); Tello v. Bank One, N.A., 218 S.W.3d 109, 118 (Tex. App.–Houston [14th Dist.] 2007, no pet.). Because the trial court did not specify the grounds for its ruling, we must affirm if any of the grounds presented to the trial court and preserved for appellate review has merit. Provident Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 216 (Tex. 2003).

**2.** On appeal, Lopez has abandoned his cause of action for ordinary negligence and relies only on a premises liability claim.

## Analysis

In two issues, Lopez contends the trial court erred in granting summary judgment to Freeport–McMoRan and Ensign. We address the propriety of summary judgment as to each appellee separately.

### A. Freeport–McMoRan's Motion for Summary Judgment

In his first issue, Lopez challenges the summary judgment granted to Freeport–McMoRan. Lopez contends that Chapter 95 does not apply to this case or there is a material fact question as to its application. *See* Tex. Civ. Prac. & Rem. Code §§ 95.001–.004. Lopez argues that common law premises liability principles govern his claim.

#### 1. *Applicability of Texas Civil Practice & Remedies Code Chapter 95*

We begin our analysis by addressing whether Lopez's premises liability claim is governed by Chapter 95, as Freeport–McMoRan argues, or by the common law, as Lopez argues. We address this issue first because if Chapter 95 applies, it is Lopez's "sole means of recovery." *See Abutahoun v. Dow Chem.*

---

3. For example, when Chapter 95 applies, a property owner is not liable unless it retained control over the manner in which the work was performed and had actual knowledge of the condition resulting in the injury but failed to warn. Tex. Civ. Prac. & Rem. Code § 95.003. Both the control and actual knowledge requirements must be met before the property owner will incur liability. *Oiltanking Houston, L.P. v. Delgado*, 502 S.W.3d 202, 209 (Tex. App.–Houston [14th Dist.] 2016, pet. filed) (op. on reh'g)

4. Although we would normally address the no-evidence motion first when both no-evidence and traditional summary judgment motions are filed, *see Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004), we will construe Freeport–McMoRan's Chapter 95 argument as a traditional summary judgment motion because it bore the burden to prove

---

*Co.*, 463 S.W.3d 42, 51 (Tex. 2015). The difference between Chapter 95 and the common law is material for liability purposes because, when Chapter 95 applies to a negligence claim, it imposes more onerous evidence requirements to establish entitlement to recovery.[3] Like all issues of statutory construction, we review Chapter 95's applicability *de novo. Id.* at 46.

Freeport–McMoRan had the burden to establish Chapter 95's applicability. *Cox v. Air Liquide America, LP*, 498 S.W.3d 686, 689 (Tex. App.–Houston [14th Dist.] 2016, no pet.); *see Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex. App.–Houston [1st Dist.] 2005, no pet.). Accordingly, we construe this part of its motion as a traditional motion for summary judgment. *See Cox*, 498 S.W.3d at 689.[4] A defendant proves Chapter 95 applies by presenting evidence conclusively establishing that all elements of section 95.002 have been met.[5] *See Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 351 (Tex. App.–Houston [14th Dist.] 2008, no pet.).

As relevant to this case, Chapter 95 applies only to a claim against a proper-

---

Chapter 95's applicability. *See Cox*, 498 S.W.3d at 689; *see also* Tex. R. App. P. 47.1. Freeport–McMoRan cannot obtain a no-evidence summary judgment motion regarding an issue on which it has the burden of proof. *See Cox*, 498 S.W.3d at 689.

5. Section 95.002 states:

This chapter applies only to a claim:
(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code § 95.002.

ty owner for personal injury to an employee of a contractor or subcontractor "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." Tex. Civ. Prac. & Rem. Code §§ 95.001(1), 95.002. As the Supreme Court of Texas has recently held, section 95.002 requires that the injury in question must result from "a condition or use of the *same improvement* on which the contractor (or its employee) is working when the injury occurs." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016) (citing *Hernandez v. Brinker Int'l Inc.*, 285 S.W.3d 152, 157–58 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (plurality op.)) (emphasis added). Thus, for Chapter 95 to apply, Freeport–McMoRan was required to show that: (1) it is a property owner against whom a contractor's employee asserts a personal injury claim; and (2) the alleged injury arose from a condition or use of an improvement to real property, which the contractor's employee was constructing, repairing, renovating, or modifying when the injury occurred. *Id.*; Tex. Civ. Prac. & Rem. Code § 95.002.

Lopez does not dispute that his claim meets the requirements of section 95.002(1). Freeport–McMoRan established that it is the leaseholder and it owns and operates the Well. *See Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 397 (Tex. App.–El Paso 2008, pet. denied) (owner of mineral interests was property owner under section 95.001); *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 84 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (holder of mineral leases was property owner under section 95.001). Freeport–

McMoRan also established that Lopez is asserting a personal injury claim as an employee of a contractor or subcontractor. Thus, section 95.002(1) is satisfied.

Next, we consider whether Freeport–McMoRan established the elements of section 95.002(2). Section 95.002(2) requires the movant to prove two things: (1) that the injury arose from a condition or use of an improvement to real property; and (2) that the contractor's employee was constructing, repairing, renovating, or modifying that same improvement when the injury occurred. Tex. Civ. Prac. & Rem. Code § 95.002(2); *Ineos*, 505 S.W.3d at 567; *see also Hernandez*, 285 S.W.3d at 157–58.

In its summary judgment motion, and on appeal, Freeport–McMoRan argues that section 95.002(2) is established because (a) the Well is an improvement to real property, (b) the Well and Rig are in fact the same improvement, and (c) Lopez was working on the Well when he was injured. Citing court decisions holding that oil and gas wells are improvements to real property,[6] Freeport–McMoRan states that Lopez was "constructing, repairing, renovating or modifying an improvement to real property" because he was "working on a site where a well was being drilled, and [he was] contributing to the drilling." Further, according to Freeport–McMoRan, the Rig and Well together constitute a single improvement because construction of the Well would necessarily cease without the Rig.

Lopez counters that his claim does not meet the requirements of section 95.002(2) because the defective condition in question—the handrail—is part of the Rig and

6. *E.g., Fox v. Thoreson*, 398 S.W.2d 88, 89 (Tex. 1966) (referring to gas well constructed on real property premises as "improvement"); *Painter*, 271 S.W.3d at 399; *Francis*, 130 S.W.3d at 84–85; *Hunt v. HNG Oil Co.*, 791 S.W.2d 191, 194 (Tex. App.–Corpus Christi 1990, writ denied) (referring to producing wells and well in process of completion as "improvements"); *Holley v. NL Indus./NL Acme Tool Co.*, 718 S.W.2d 813 (Tex. App.–Austin 1986, writ ref'd n.r.e.).

Lopez was not constructing, repairing, renovating, or modifying the Rig when he was injured.

The linchpin of Freeport–McMoRan's argument is the proposition that the Well and Rig constitute a single, unified improvement to real property. In light of *Ineos*, we reject this assertion based on the present record. In evaluating the applicability of Chapter 95, *Ineos* examined whether an independent contractor's injuries arose from a condition of the specific improvement on which he was working at the time of the injury. *Ineos*, 505 S.W.3d at 567. The contractor sustained injury in an explosion while replacing a valve on a furnace header. *Id.* at 559. His injury occurred while working on a "common header system" of furnace 101B, while the gas leak occurred in a pipe valve near a different furnace, 101D. *Id.* at 567. Each furnace could be shut down separately without shutting down any of the other furnaces. *Id.* The court stated, even though the valves and furnaces were separate in a technical sense, the evidence established they were "all part of a single processing system within a single plant." *Id.* at 568. The court did not divide the gas processing system valve-by-valve or line-by-line into separate, discrete improvements and held that the processing system was a single improvement for purposes of Chapter 95, defining "improvement" to include all additions to the freehold except for trade fixtures that can be removed without injury to the property. *Id.*

Unlike *Ineos*, the record in the present case, viewed most favorably to Lopez, does not establish that the Rig and the Well constitute a single improvement. *Cf. Ineos*, 505 S.W.3d at 567–68; *see also Rawson v. Oxea Corp.*, 2016 WL 7671375, *8 (Tex. App.–Houston [1st Dist.] Dec. 22, 2016, no pet. h.) (mem. op.). Freeport–McMoRan's summary judgment evidence distinguishes between the Well and the Rig. The Well is owned and operated by Freeport–McMoRan; the Rig is owned by Ensign. The stairway where Lopez's injury occurred is part of the Rig structure. There is evidence that the Rig is a unit independent of, and physically separable from, the Well. Although the summary judgment record sheds scant light on the details, the Rig is described as a mobile unit in itself that can be, and is designed to be, unattached from property and moved from one location to another. For example, George Wilson, Lopez's supervisor, testified,

> A. . . . And the rig was set up, and they drilled the first stage of the well, which is your surface hole; and they ran their surface pipe, and they cemented. And then they moved the rig to the next one, and they did it and moved it to the third one and did it.
>
> ***
>
> But any rate, we rigged up, and we drilled that well; and we slid and we drilled the next well; and we slid and we drilled the next well. They had one going a mile this way and one going a mile that way, and another one going a mile the other way.

Thus, if the Rig was moved to another site, which could be done without injury to the Well, the stairway and railing in question would necessarily be moved as well because they are incorporated into the Rig structure.

The evidence offered by Freeport–McMoRan established the Rig was used in drilling the Well, not that the two constituted a single system or a single improvement. Accepting *arguendo* Freeport–McMoRan's premise that the Well is an improvement to real property, the summary judgment evidence does not establish that the Rig was permanently annexed to the Well such that it was transformed into an improvement to realty. *See Sonnier v. Chisholm–Ryder Co., Inc.*, 909 S.W.2d 475,

479 (Tex. 1995). This Well and this Rig were not attached to each other in the same way that led the *Ineos* court to conclude that each furnace there at issue was nonetheless part of a "single improvement." *Ineos*, 505 S.W.3d at 568. Thus, under the evidence presented, we hold that the Well and the Rig do not together constitute a single improvement to real property. *Cf. id.*

In the trial court, Freeport–McMoRan also contended Chapter 95 applied even if the object causing Lopez's injury was not the Well, so long as his injury arose from work performed in furtherance of drilling the Well. *See Painter*, 271 S.W.3d at 399 (concluding Chapter 95 applied because drilling is an essential part of the construction of a well). However, we decline to follow *Painter* in light of the Texas Supreme Court's decision in *Ineos*.[7]

■ Having rejected the argument that the Well and Rig are a single improvement for purposes of section 95.002(2), and given that Lopez's injury arose from the condition of a stairway on the Rig, the questions become whether the Rig is an improvement to real property and, if so, whether Lopez was constructing, repairing, renovating, or modifying the Rig when his injury occurred. We need not address the former question because the answer to the latter is dispositive. Assuming the Rig was an improvement to real property, the summary judgment evidence shows conclusively that Lopez was not modifying the Rig when he was injured. Freeport–McMoRan hired Stratagraph, Lopez's employer, to perform mud

logging services in connection with drilling the Well, not to construct, repair, renovate, or modify the Rig. Lopez was utilizing a stairway on the Rig to access the area where he obtained mud samples in furtherance of his mud logging work.

For these reasons, we hold that Freeport–McMoRan's summary judgment motion did not establish that Chapter 95 applies to Lopez's claim. Thus, we turn to whether Freeport–McMoRan demonstrated alternatively its entitlement to summary judgment under traditional premises liability principles. *See 4Front Engineered Solutions, Inc. v. Rosales*, 505 S.W.3d 905, 911 (Tex. 2016); *Abutahoun*, 463 S.W.3d at 52.

### 2. Common Law Premises Liability

■ Because Chapter 95 does not apply, Lopez's claim is governed by traditional premises liability principles applicable to claims asserted by an independent contractor's employees. Under Texas law, a person injured on another's property has two potential but mutually exclusive causes of action against the owner of the property: (1) an ordinary negligence claim arising from a negligently conducted activity on the premises, or (2) a premises liability claim for an unreasonably dangerous condition on the premises. *Clayton W. Williams Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997); *E.I. Dupont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 56 (Tex. App.–Houston [14th Dist.] 2014, pet. dism'd by agr.). Lopez has cast his claim as one of premises liability based on an unreasonably dangerous condition, and we

---

**7.** Like Lopez here, the plaintiff in *Painter* argued that Chapter 95 did not apply because the injury in that case arose from a drilling rig, which was not an improvement to real property. *Painter*, 271 S.W.3d at 397–98. The court of appeals rejected the plaintiff's argument, stating that Chapter 95 applied "despite the fact that the object causing the injury is not itself an improvement, where the injury

arises from work being done on an improvement." *Id.* at 398. The result in *Painter* is inconsistent with *Ineos. Ineos*, 505 S.W.3d at 567–68; *see also Hernandez*, 285 S.W.3d at 161 (plurality op.) (concluding Ch. 95 did not apply because the roof that collapsed and the air conditioning system being worked on were separate improvements).

agree his cause of action is properly characterized as sounding in premises liability as opposed to ordinary negligence. *Roye*, 447 S.W.3d at 57.

As in any negligence action, a defendant in a premises liability case is liable only to the extent it owes the plaintiff a legal duty. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008). The existence of a duty is a question of law for the court. *Id.* Generally, a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that the property owner knew or should have known about. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010); *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 162 (Tex. 2007); *Roye*, 447 S.W.3d at 58. The owner's duty is modified, however, when the plaintiff is an employee of an independent contractor, as Lopez was here. *Moritz*, 257 S.W.3d at 215; *Wilhelm v. Flores*, 195 S.W.3d 96, 98 (Tex. 2006) (per curiam); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 & n. 1 (Tex. 1999); *Roye*, 447 S.W.3d at 58–59. A premises owner has no duty to warn a contractor's employees of open and obvious hazards or to make those hazards safe, but the owner does have a duty with respect to pre-existing concealed hazards that it knows or should have known about. *Moritz*, 257 S.W.3d at 215–16; *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000). A landowner may be liable for injury caused by concealed and unreasonably dangerous hazards on its premises if it knew the premises had become unsafe or a reasonable inspection, if conducted, would

have discovered the danger. *See Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 203 (Tex. 2015); *CMH Homes, Inc.*, 15 S.W.3d at 101.

In its summary judgment motion, Freeport–McMoRan argued that Lopez's premises liability claim failed as a matter of law because the evidence established conclusively that the alleged defect was not concealed. Freeport–McMoRan's motion did not challenge any other element of Lopez's premises liability cause of action. Lopez contends the gap in the handrail created an unreasonably dangerous condition.[8] The primary issue is whether the gap in the handrail was open and obvious or known to Lopez. An owner or occupier "is liable to employees of an independent contractor only for claims arising from a pre-existing defect rather than from the contractor's work, and then only if the pre-existing defect was concealed." *Moritz*, 257 S.W.3d at 215. "[A] landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Austin*, 465 S.W.3d at 204.

We consider whether Freeport–McMoRan's summary judgment evidence established that the gap in the handrail was unconcealed. The evidence presented included Lopez's deposition. Lopez testified he utilized the stairway in question frequently during the forty-six days prior to his fall while performing his mud logging duties. Lopez had been up and down the stairway several hundred times and the gap in the handrail was present each time he ascended or descended the stair-

---

8. On appeal, Lopez also argues the missing handrail on the opposite side of the stairway and poor lighting contributed to the unreasonably dangerous condition of the stairway. Lopez failed to raise the missing handrail issue in either his live pleading or his summary judgment response. We do not consider contentions raised for the first time on appeal.

*See* Tex. R. Civ. P. 166a(c). Lopez also failed to allege poor lighting as an unreasonably dangerous condition in his live pleading; although his summary judgment response, liberally construed, suggests that the lack of lighting rendered the handrail gap concealed because the accident occurred at night.

way. He stated that the gap in the handrail was obvious to him. On the many occasions he utilized the stairway prior to the fall, Lopez would lift his hand from the handrail when he reached the gap and then return his hand to the railing. The summary judgment evidence also included the deposition of George Wilson, Lopez's supervisor. Wilson testified the gap in the handrail was present from the day he arrived at the Rig and that the condition was obvious to him. Wilson stated he never had an issue with the stairway.

The present case is similar to *Moritz*, in which the plaintiff was injured after falling from a loading ramp that did not have guard rails. *See Moritz*, 257 S.W.3d at 213–14. The court noted that Moritz had been to the warehouse every day for eighteen months, generally utilizing the loading ramp, which had no guard rails. *Id.* at 213. Moritz claimed the defect was the absence of guard rails on the loading dock. *Id.* at 215. The court noted the defect was a pre-existing condition and not a concealed hazard. *Id.* The court found the owner "had no duty to warn Moritz that the ramp he had been using for more than a year had no handrails." *Id.* at 216; *see also Martin v. Gehan Homes, Ltd.*, 2008 WL 2309265, *2 (Tex. App.–Austin June 4, 2008, no pet.) (mem. op.) ("the hazards presented by the second floor landing and the absence of guardrails were not concealed, but were open and obvious").

In his summary judgment response, Lopez argued that he worked the night shift and the gap in the handrail cannot be open and obvious at night. While the evidence established Lopez's fall occurred at night, it also established that during the time Lopez performed his duties for Stratagraph, his position was that of a night logger. As a night logger he worked the 6:00 p.m. to 6:00 a.m. shift. Accordingly, his awareness of the handrail at issue was based on his use of the stairway at night.

The evidence Lopez attached to his response contains his acknowledgement that he worked the night shift during his entire tenure, and the stairway lighting on the day of the accident was no different than it was during the forty-six days preceding the accident. Lopez also filed two expert opinions with his summary judgment response, but neither expert suggests that the handrail gap was concealed. Lopez has not cited any authority that a condition is necessarily concealed if an incident occurs at night and the evidence before us does not support such a conclusion based on these facts, including Lopez's deposition testimony. *See Wallace v. ArcelorMittal Vinton, Inc.*, —— S.W.3d ——, ——, 2016 WL 6473056, *5 (Tex. App.–El Paso Nov. 2, 2016, pet. filed) (no duty to warn when plaintiff tripped over equipment on ground at night, in a poorly lit area, when evidence established she was aware of the condition). Lopez does not cite any evidence establishing that the gap in the handrail was concealed at the time of the incident. Assuming the area was "poorly lit" at night as Lopez contends, the evidence nonetheless establishes that the handrail gap was obvious, and known, to him. The evidence Lopez cites does not raise a genuine issue of material fact regarding the unconcealed nature of the handrail gap.

■ On appeal, Lopez contends that even if the condition of the handrail was open and obvious, summary judgment was not proper because it was necessary that he use the stairway, and Texas recognizes a "necessary-use" exception in the present context. *See Austin*, 465 S.W.3d at 204. But Lopez did not raise the necessary-use exception in his response to Freeport–McMoRan's motion for summary judgment. We will not address Lopez's argument as to the necessary-use exception because he asserts it for the first time on appeal. *See* Tex. R. Civ. P. 166a(c).

In sum, the evidence established that the gap in the handrail existed the entire time Lopez was working and was not concealed. Further, the evidence showed Lopez was aware of the gap in the handrail prior to his fall. Resolving all doubt in favor of Lopez, the summary judgment evidence does not create a genuine issue of material fact as to Lopez's awareness of the condition or whether it was open and obvious. We conclude Freeport–McMoRan did not owe Lopez a duty to make the handrail safe or warn him of the condition. Thus, the trial court did not err in granting summary judgment as to Freeport–McMoRan.

We overrule Lopez's first issue.

## B. Ensign's Motion for Summary Judgment

Lopez's second issue challenges the summary judgment in favor of Ensign. In the no-evidence portion of Ensign's motion, Ensign argued that Lopez had no evidence of each required element of a premises liability theory, and that Ensign owed no duty to Lopez. In its traditional motion, Ensign asserted, like Freeport–McMoRan, that it owed no duty to warn because Lopez acknowledged that the gap in the handrail was not concealed.

Lopez contends genuine issues of material fact exist as to all elements of his premises liability claim against Ensign. We first address whether Ensign owed Lopez a duty based on the unconcealed nature of

the condition because the answer to that question is dispositive of Lopez's second issue.[9]

### 1. Common Law Premises Liability

Like Freeport–McMoRan, Ensign argued in its summary judgment motion that the unconcealed nature of the handrail gap negated any duty to Lopez. Ensign's motion attached the depositions of Lopez and Wilson, which was for the most part the same evidence on which Freeport–McMoRan relied. As discussed, Lopez was aware of the handrail gap and traversed the stairway hundreds of times before this incident. Lopez never reported the gap as hazardous.

In his summary judgment response, Lopez argued the gap in the handrail, combined with the poor lighting of the stairway, created an unreasonably dangerous condition.[10] Construing his summary judgment response liberally as arguing that the poor lighting concealed the handrail gap, we reject that argument on this record for the same reasons we rejected it as to Freeport–McMoRan's motion. Lopez relied on the deposition testimony of Juan Fernando Garcia, Ensign's rig manager, in his response to Ensign's motion. Garcia testified that there was a light at the top of the stairway, and no light in the middle or bottom section of the stairway. Additionally, Lopez contends Garcia's testimony established that the light at the top of the stairway was dirty and not illuminating as

---

9. To establish the existence of a duty, Lopez had the burden to prove the existence of a concealed hazard. *Moritz*, 257 S.W.3d at 215; *Roye*, 447 S.W.3d at 59. Ensign's no-evidence motion for summary judgment did not specifically assert that Lopez had no evidence of a concealed hazard. Although we would normally address the no-evidence motion first when both no-evidence and traditional summary judgment motions are filed, *see Ford Motor Co.*, 135 S.W.3d at 600, we will review the propriety of granting the traditional summary judgment on the concealed hazard issue

first because it is dispositive. *See* Tex. R. App. P. 47.1.

10. As Lopez did with respect to Freeport–McMoRan's brief, Lopez argues on appeal that the missing handrail on the opposite side of the stairway contributed to the unreasonably dangerous condition of the stairway. Because Lopez did not raise the issue in the trial court, we do not consider his argument as grounds for reversal. *See* Tex. R. Civ. P. 166a(c).

much area as it would have had it been clean. However, the undisputed evidence shows the lighting was in the same condition during the forty-six days Lopez worked on site before his injury. Again, Lopez worked the night shift the entire time on the job. The handrail gap was obvious to Lopez, even at night during his shifts. Accordingly, the evidence regarding the lighting does not establish that the gap in the handrail was concealed. Construing the evidence in Lopez's favor, he did not raise a genuine issue of material fact that the gap in the handrail, either by itself or combined with the condition of the lighting, was a concealed hazard. We conclude Ensign did not owe a duty to make safe or warn Lopez of the condition of the stairway.

### 2. *Necessary–Use Exception*

▬▬ Lopez next argues that Ensign is not entitled to summary judgment regardless whether the handrail's condition was open and obvious because of the necessary-use exception. *Austin*, 465 S.W.3d at 203–04. When an owner/occupier has no duty to warn of an unreasonably dangerous premises condition because it is unconcealed or known to the plaintiff, liability may still exist "when the invitee necessarily must use the unreasonably dangerous premises, and despite the invitee's awareness and appreciation of the dangers, the invitee is incapable of taking precautions that will adequately reduce the risk." *Id.* at 204. When the necessary-use exception applies, a landowner's duty to make the premises safe is not relieved by the plaintiff's awareness of the risk. *Id.* at 208. Rather, the plaintiff's awareness of the risk is relevant to the issue of proportionate responsibility. *Id.* Lopez preserved this argument in his response to Ensign's motion for summary judgment so we consider it.[11]

Lopez argues that his use of the stairway with the defective handrail was necessary and that Ensign should have anticipated that he was unable to avoid the risks. He contends that "his only means of ingress and egress to the point on the rig where he had to go to do his job was via the defective stairway." Accordingly, Lopez argues that Ensign was not relieved of its duty to make the premises safe. *See id.* at 208.

Lopez relies on Garcia's testimony as evidence that the defective stairway was his only means of accessing the area of the Rig required by his job duties. Specifically, Garcia testified in his deposition:

Q. Okay. Now, did Ryan Lopez have any other equipment other than Ensign equipment, and equipment set up by Ensign on site, any other way to access the shale shaker?

A. No.

This testimony constitutes evidence that Lopez could only access the shale shaker by using or traversing Ensign equipment. However, Lopez presented no evidence

---

11. Lopez also argues that whether a condition is open and obvious presents a fact issue as to proportionate responsibility and does not bar his claim, relying on *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978). Recently, the Supreme Court of Texas clarified its *Parker* decision, which courts have construed as abolishing the "no-duty" rule. *Austin*, 465 S.W.3d at 208. In *Austin*, the court noted its decisions subsequent to *Parker* recognized that "a landowner generally has no duty to protect or warn an invitee against unreasonable dangers that are open and obvious or otherwise known to the invitee." *Id.* at 207. The court clarified that *Parker* represented an exception to this general rule. *Id.* at 203, 208. If an exception to the general rule applies, "the obviousness of the danger and the invitee's appreciation of it may be relevant to a landowner's defense based on the invitee's proportionate responsibility." *Id.* at 204. The court reaffirmed the general rule but retained *Parker* as an example of the necessary-use exception. *See id.* at 208.

that the particular stairway on which he fell was the only route to access the shale shaker. Other evidence, including Lopez's deposition, conclusively established that the Rig provided multiple means of ingress and egress to and from the shale shaker. Lopez testified:

Q. Okay. If you wanted to take a different route to the shale shaker, could you do that?

A. Yeah. You'd have to go through a lot more stuff.

Wilson also testified he used another stairway to access the shale shaker and collect drill cutting samples. Lopez did not present evidence establishing that the alternate route to the shale shaker was unreasonably dangerous or that the alternate route was not available to him. Lopez did not present evidence establishing that the stairway was the only means of ingress and egress available to him. There is evidence Lopez could have avoided the risk posed by the stairway by using an alternate stairway to access the Rig. Construing the evidence in favor of Lopez, we conclude the necessary-use exception does not apply and Ensign had no duty to warn Lopez of the open and obvious condition of the stairway of which he was aware.

As the trial court could have found Ensign did not owe a duty to Lopez under a premises liability theory, we do not address the remaining grounds asserted by Ensign in its motion and hold the trial court did not err in granting Ensign's motion for summary judgment. We overrule Lopez's second issue.

### Conclusion

For the above reasons, we affirm the trial court's judgments.