

## NUMBER 13-17-00344-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI–EDINBURG

---

**LOS COMPADRES PESCADORES, L.L.C.,**            **Appellant,**

**v.**

**JUAN G. VALDEZ AND ALFREDO TERAN,**            **Appellees.**

---

**On appeal from the County Court at Law No. 2
of Cameron County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellant Los Compadres Pescadores, L.L.C. (Los Compadres) appeals a final

judgment in favor of appellees Juan G. Valdez and Alfredo Teran. By seven issues, Los

Compadres contends that the judgment awarding appellees damages for personal

injuries should be reversed because: (1) Chapter 95 of the Texas Civil Practice and Remedies Code applies to appellees' suit (issue one); (2) there was no jury finding as required by Chapter 95 that Los Compadres had actual knowledge of the danger or condition that resulted in appellees' injuries or that Los Compadres had control over appellee's work (issues two and three); (3) there was no jury question supporting a finding that Los Compadres was liable under an agency theory (issue four); appellees were aware of the danger so Los Compadres cannot be held liable for the failure to warn (issue five); and (5) the evidence is legally and factually insufficient under Chapter 95 to support a finding of causation (issues six and seven). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002. We affirm.

## I.    BACKGROUND

Los Compadres hired Luis Torres to supervise and coordinate the construction of condominiums on South Padre Island and Luis Robert Paredes Jr., doing business as Paredes Drilling Co., to perform specialty drilling work required to dig the foundation piers for the condominiums.[1] Paredes hired both appellees and Ricardo Gallin, a non-party, to assist with the drilling work on the property.

According to Paredes, he usually works from the back of a property to the front when performing the drilling work; however, in this case Torres asked him to begin in the front of the property due to an energized power line hanging overhead in the back portion of the property located on an easement. Paredes stated that Torres told him to work around the line, and he did so. Paredes testified that he asked Torres about the power

---

[1] The parties dispute Torres's role in the project. Los Compadres claims that he was hired as their general contractor while appellees claim that Los Compadres hired him to act as its agent/employee.

2

line, and Torres told him that he "was going to talk to AEP about it."[2]  Specifically, Paredes testified that Torres said, "I'm going to take care of it.  I'll talk to them."  Subsequently, Paredes said that he saw Torres on the worksite "with somebody from AEP."  Paredes stated, "I wasn't in the conversation, but after Torres walked towards me, I said, 'Are we good to go?'  And he said, 'Yes, go ahead and go.'"  Torres testified that Paredes "said he was going to take care of the line"; however, on the date of the incident, the line had not been de-energized.

According to Paredes, on February 10, 2010, the date of the accident, Torres was not present; however, Torres's brother was there.[3]  Paredes remembered talking to Torres on his cell phone and on Torres's brother's cell phone, and Torres informed him that AEP would not be de-energizing the power line.  According to Paredes, Torres instructed him to "go forward that day, even though the lines weren't de-energized."  Paredes also stated, "He [Torres] didn't tell me whether [the line] was de-energized or energized, he just told me that—you know, it was—I knew it was there and I knew he had told me to go . . . forward."

Paredes, appellees, and Gallin dug a hole approximately ten feet from the power line.  The men poured cement into the hole and used a metal rebar to push air pockets out of the concrete.  Appellees assisted Paredes with lifting and maneuvering the rebar because it was heavy.  While the men maneuvered the rebar, it contacted the power line and the men were electrocuted.  Paredes and appellees were thrown back, knocked

---

[2] AEP stands for American Electric Power, which is "a competitive retail energy provider for more than 400,000 customers."  *See* AMERICAN ELECTRIC POWER, http://www.aep.com (last visited May 30, 2019).  The evidence showed that AEP owned the power line that caused appellees' injuries.

[3] Paredes could not recall Torres's brother's name.

unconscious, and sustained burns. Appellees were transported to the hospital and treated for their injuries.

Appellees sued Los Compadres for premises liability and negligence, alleging that Los Compadres' agent, acting in the course and scope of employment, was guilty of the following negligent conduct: (1) failing to notify the operator of the electrical line (AEP) at least forty-eight hours before the work began in violation of Chapter 752.003(a) of the Texas Health and Safety Code; (2) failing to negotiate a satisfactory mutual arrangement to provide temporary de-energization and grounding or temporary relocation of the line in violation of Chapter 752.003(b) of the Texas Health and Safety Code; and (3) performing a function or activity on land when it was not safe to do so, thereby causing appellees' injuries in violation of Chapter 752.004 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 752.003, 752.004.

The jury found that Los Compadres was 50% negligent and that Paredes and AEP were each 25% negligent in causing appellees' injuries. The trial court ordered Los Compadres to pay Valdez $96,983.51 in damages and pre-judgment interest and to pay Teran $52,011.57 in damages and pre-judgment interest. Because appellees settled with AEP, the trial court gave Los Compadres and Paredes settlement credits of $17,700 for Valdez and $7,300 for Teran. This appeal followed.

## II. APPLICABLE LAW

"Chapter 95 enunciates a general rule of non-liability for property owners when a contractor or subcontractor or an employee of a contractor or subcontractor is injured while performing repairs or construction." *Rosa v. Mestena Operating, LLC*, 461 S.W.3d 181, 182–87 (Tex. App.—San Antonio 2014, pet. denied). The property owner has the

4

initial burden to establish that Chapter 95 applies. *Montoya v. Nichirin–Flex U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex. App.—El Paso 2013, no pet.). A property owner establishes that Chapter 95 applies if the plaintiff's claim is for personal injury that "arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE ANN. § 95.002. Once the property owner establishes that Chapter 95 applies, the burden shifts to the plaintiff to establish that the property owner (1) exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports and (2) had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn the plaintiff of that danger or condition. *Id*.

Chapter 95 is the plaintiff's sole means of recovery if it applies. *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 561 (Tex. 2016). "Chapter 95 only applies when the injury results from a condition or use of the *same improvement* on which the contractor (or its employee) is working when the injury occurs." *Id*. at 567 (emphasis added).

### III.     CHAPTER 95

By its first issue, Los Compadres contends that we must recognize that Chapter 95 applies.

As we understand it, Los Compadres first generally argues that appellees' claims are governed by Chapter 95 because the Texas Supreme Court has construed Chapter 95's "condition or use" language to mean that Chapter 95 applies to both premises liability and negligence claims against a property owner. We agree with Los Compadres that Chapter 95 applies to "'all negligence claims that arise from either a premises defect or

the negligent activity of a property owner or its employees.'" *Torres v. Chauncey Mansell & Mueller Supply Co.*, 518 S.W.3d 481, 486 (Tex. App.—Amarillo 2017, pet. denied). However, as further explained below, for Chapter 95 to apply, a property owner must first establish that the plaintiff's injury was caused by the *same* improvement the plaintiff was constructing, repairing, renovating, or modifying when the injury occurred. *Ineos USA, LLC,* 505 S.W.3d at 567. Thus, although this case involves negligence claims and Los Compadres is the property owner, our analysis does not end there.[4] *See id*.

Los Compadres had the initial burden to establish that Chapter 95 applies by showing that (1) Los Compadres is a property owner, (2) appellees alleged that Los Compadres is liable for personal injury, (3) appellees were employees of a contractor or subcontractor, and (4) appellees' claims arise from a condition or use of an improvement to Los Compadres' property where the contractor or subcontractor was constructing, repairing, renovating, or modifying the improvement. *See Montoya*, 417 S.W.3d at 511. Although, Los Compadres states in its brief that there is no dispute as to the first three elements, it does not specifically state that appellees were constructing, repairing, renovating, or modifying an improvement when the injury occurred.[5] *See id*.

Nonetheless, Los Compadres cites *Torres*—a case that has similar facts. In *Torres*, the appellant was electrocuted when the handle of a bull float he was using to

---

[4] We note that Los Compadres did not ask the trial court to make a ruling regarding the applicability of Chapter 95, and we are addressing this issue for the first time on appeal. Nonetheless, a defendant's claim that Chapter 95 applies is not an affirmative defense, and the defendant is not required to plead it. *Gorman v. Ngo H. Meng*, 335 S.W.3d 797, 802 (Tex. App.—Dallas 2011, no pet.). "The issue is not whether [Los Compadres] presented evidence or argument in the trial court about the applicability of [C]hapter 95. Rather, we must determine, considering the record as a whole, whether the trial court erred by determining [C]hapter 95 [does not apply to appellees'] claims against [Los Compadres]." *Id*.

[5] Appellees also do not address this prong explicitly in their brief.

6

smooth freshly poured cement in a parking lot touched an electrical line that was hanging overhead. 518 S.W.3d at 484. The trial court granted summary judgment in favor of the property owner, and the appellate court affirmed, holding in relevant part, that Chapter 95 applied because the power line was part of the workplace, which the court concluded must be considered when determining whether Chapter 95 applies. *Id*. at 485. The *Torres* court relied on *Ineos* and disavowed *Hernandez v. Brinker International, Inc.*, 285 S.W.3d 152, 157–58 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (plurality op.), even though the *Ineos* court cited *Hernandez* approvingly and relied upon to hold that Chapter 95 only applies if the injured plaintiff was constructing, repairing, renovating, or modifying the *same* improvement that caused the injury. [6] *Ineos USA, L.L.C.*, 505 S.W.3d at 567; *Torres*, 518 S.W.3d at 484.

The *Ineos* court adopted the *Hernandez* analysis. *See* 505 S.W.3d at 567. In *Hernandez*, the appellant was hired to fix an air conditioning unit, and while he carried a compressor either walking to the unit or away from it, the roof where the unit was located collapsed, causing the appellant's injury. 285 S.W.3d at 154. The property owner filed a motion for summary judgment claiming that Chapter 95 barred the plaintiff's recovery because the appellant testified that the property owner exercised no control over his work. *Id*. The trial court granted the summary judgment. *Id*.

On appeal, the appellant argued that Chapter 95 only applied if his claim arose from the condition or use of the improvement he was repairing (the air conditioning system), but because his claim arose from the condition of a different improvement (the

---

[6] The supreme court cited *Hernandez* with a parenthetical which stated, "holding that Chapter 95 did not apply because the injury arose from a different improvement than the one the plaintiff was repairing." *Ineos USA, L.L.C. v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016).

roof), Chapter 95 did not apply. *Id*. at 155. The property owner conceded the injury resulted from the use of the roof and not from the condition or use of the air conditioning system; however, it argued that the entire building was the "improvement," and the air conditioning unit was a mere "fixture" to the building. *Id*. The court of appeals agreed with the appellant and held that the roof and the air conditioning unit were separate improvements to real property and that Chapter 95 applies only to a claim that involves the *same* improvement for which the contractor was on the premises to work on at the time of the injury. *Id*. at 158.

The Texas Supreme Court in *Ineos* agreed with the holding in *Hernandez*, explaining that Chapter 95 applies only when the injury results from a condition or use of the *same* improvement that the contractor is constructing, repairing, renovating, or modifying. 505 S.W.3d at 567. The *Ineos* court then analyzed whether the summary judgment evidence established that the improvement the injured party was constructing, repairing, renovating, or modifying was the *same* improvement that caused his injury. *Id*. at 567–68. "In evaluating the applicability of Chapter 95," the *Ineos* court

> examined whether [the plaintiff's] injuries arose from a condition of the specific improvement on which he was working at the time of the injury. The [plaintiff] sustained injury in an explosion while replacing a valve on a furnace header. His injury occurred while working on a "common header system" of furnace 101B, while the gas leak occurred in a pipe valve near a different furnace, 101D. Each furnace could be shut down separately without shutting down any of the other furnaces. The court stated, even though the valves and furnaces were separate in a technical sense, the evidence established they were "all part of a single processing system within a single plant." The court did not divide the gas processing system valve-by-valve or line-by-line into separate, discrete improvements and held that the processing system was a single improvement for purposes of Chapter 95, defining "improvement" to include all additions to the freehold except for trade fixtures that can be removed without injury to the property.

*Lopez v. Ensign U.S. S. Drilling, LLC*, 524 S.W.3d 836, 844 (Tex. App.—Houston [14th

8

Dist.] 2017, no pet.) (internal citations omitted).

The *Torres* court acknowledged that *Ineos* agreed with the law in *Hernandez* (that the plaintiff must have been injured by the *same* improvement), but it refused to assume that the supreme court agreed with the application of the law to the facts in that case. 518 S.W.3d at 488–89. Instead, the *Torres* court determined that *Hernandez* was wrongly decided because the plaintiff could not have worked on the air conditioning unit without a foundation (the roof). *Id*. The *Torres* court "read *Ineos* as directing [it] to determine what the 'improvement' is by looking at it as a whole, not in potentially divisible parcels." *Id*. at 487. In evaluating *Ineos*, the *Torres* court stated,

> What constitutes an improvement is not limited to the specific mechanism (e.g. gas valve) causing the injury. Rather, the interrelationship of the mechanism with its physical (e.g. within a 'single processing system') and geographic (e.g. 'within a single plant on Ineos' property) environments are factors that define the improvement's breadth.

*Id*. Therefore, the *Torres* court determined that the injury to the plaintiff in *Hernandez* was a result of the condition or use of the *same* improvement the plaintiff was constructing, repairing, renovating, or modifying. *Id*. at 489.

Without addressing whether, in this case, Los Compadres established that the improvement appellees were constructing, repairing, renovating, or modifying (the foundation) was the *same* improvement (the power line) that caused their injuries, Los Compadres points out that in *Torres*, "the electrical lines were part of the 'workplace' provided by the property owner" and "Chapter 95.003 explicitly contemplates claims against a property owner regarding the provision of a 'safe workplace,' and was intended to cover Torres's claims against the property owner for his electrocution at the job site." Los Compadres then argues that "[t]he present case presents a nearly identical situation"

9

to the situation in *Torres*, and "[a]ppellees sued Los Compadres for premises liability and negligent activity after [a]ppellees sustained injuries from electrocution while working as subcontractors on [Los Compadres'] property." Los Compadres ends by stating, "Under the plain language of Chapter 95 and the precedent provided by the Texas Supreme Court, Chapter 95 plainly governs Los Compadres' liability as a matter of law."[7]

Thus, as we understand it, Los Compadres, relying on *Torres,* believes that Chapter 95 applies to injuries that arise from *the failure to provide a safe workplace*; therefore, the nature of the workplace must be factored into our analysis. However, *Ineos* does not factor the safety of the workplace in a general sense into its analysis. *See* 505 S.W.3d at 567. *Ineos* did not discuss the conditions of the area or object being improved, the failure to provide a safe workplace, or the nature of the workplace provided. *See id*. The *Ineos* court analyzed the facts to determine whether the pipe that caused the plaintiff's injury was the *same* improvement as the pipe he was hired to repair. *Id*. at 567–68. The *Ineos* court found that the pipes were "all part of a single processing system within a single plant," and therefore the pipe that caused the plaintiff's injury was the same improvement he was hired to repair. *Id*. at 568.

In *Lopez*, the court of appeals relied on *Ineos* when it determined that a rig was not an improvement to real property and that a rig and well used for drilling were not a single system or a single improvement because there was no evidence that the rig was permanently annexed to the well, such that it was transformed into an improvement. 524 S.W.3d at 844. The court relied on the following: (1) the well and rig had separate

---

[7] Los Compadres does not provide any other argument that we can construe as supporting a contention that the improvement appellees were improving constitutes the same improvement that caused their injuries.

owners; (2) the stairway where the injury occurred was part of the rig; (3) there was evidence that the rig was a unit independent of, and physically separable from, the well; and (4) the rig was described as a mobile unit designed to be unattached from property and moved from one location to another. *Id*. The court held that the evidence did not establish that Chapter 95 applied to the plaintiff's claim. *Id*.

The *Lopez* court declined to follow *Painter v. Momentum Energy Corp.*, 271 S.W.3d 388, 397 (Tex. App.—El Paso 2008, pet. denied), a case decided prior to *Ineos*. *Painter* held that although the rig was not a part of the well, Chapter 95 applies "despite the fact that the object causing the injury is not itself an improvement, where the injury arises from work being done on an improvement." *Lopez*, 524 S.W.3d at 847 n.7 (citing *Painter*, 271 S.W.3d at 397–98). The *Painter* court determined that the rig and well were part of the same improvement. 271 S.W.3d at 397. The *Lopez* court found *Painter* inconsistent with *Ineos* and refused to follow it. 524 S.W.3d at 844.

An improvement to real property is defined as "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015); *see Lopez*, 524 S.W.3d at 844. Here, the power line belonged to AEP, was in the easement, and there is no evidence that it was an addition to the freehold.[8] *See id*. And Los Compadres has made no argument that the power line was an improvement to the real property in this case. Based on the cited authorities and the record before us, we cannot conclude that the evidence established that the overhead power line in this case was an improvement to the real property.

---

[8] We note that Los Compadres stated in a motion for summary judgment that "the power line at issue in this lawsuit was not on [its] premises, but rather was on an easement used by AEP, which Los Compadres does not control."

11

Moreover, even assuming without deciding that the power line could be considered an improvement to real property, it was Los Compadres' burden to establish that the power line was the same improvement appellees were hired to construct, repair, renovate, or modify. *See Ineos USA, LLC,* 505 S.W.3d at 567. The *Ineos* court concluded that the pipe that injured the appellant was the same improvement because *the evidence* established that the valves and furnaces were "all part of a *single processing system* within a single plant." 505 S.W.3d at 568 (emphasis added). In *Torres*, the property owner filed a motion for summary judgment with *evidence* establishing that the power line was the same improvement because it was part of the workplace. 518 S.W.3d at 485. However, the *Torres* court acknowledged that, although it believed that the roof and air conditioning unit in *Hernandez* were part of the same improvement, it could "see a scenario where the interrelationship between the air conditioner, its surroundings and the point of injury becomes too attenuated" for an appellate court to determine that the air conditioning unit and the foundation are part of the same improvement. 518 S.W.3d at 489.

Here, Los Compadres has not directed us to any *evidence* supporting its assertion, and it does not direct this Court to the record where it argued to the trial court that Chapter 95 applied as a matter of law because the power line was part of the same improvement. Unlike *Torres*, which involved a summary judgment with evidence attached supporting the trial court's finding that Chapter 95 applies, here there was a jury trial, and Los Compadres did not ask the trial court to either rule as a matter of law that the power line is the same improvement or request a jury question regarding same. Thus, because the initial burden rested with Los Compadres to establish the applicability of Chapter 95 in

the trial court, and it did not do so, we cannot conclude that the trial court abused its discretion or erred in any way by not so finding. Moreover, without citation to evidence regarding the interrelationship between the specific mechanism causing the injury (the power line) with its physical and geographic environments, we are unable to follow *Torres's* reasoning here as we have nothing before us to analyze.[9] We overrule Los Compadres' first issue.[10]

## IV. VICARIOUS LIABILITY THEORY

By its third issue, Los Compadres contends that appellees' vicarious liability theory of recovery is waived because they did not request a jury question regarding whether Torres was its agent. Specifically, Los Compadres argues that under Rule 279, appellees were required to obtain a finding that Torres was its employee. *See* TEX. R. CIV. P. 279.

Rule 279 "provides that, unless the issue was conclusively established by the evidence, a party's failure to submit a properly worded issue, or to object to its omission, results in waiver."[11] *Robertson v. Odom*, 296 S.W.3d 151, 159 (Tex. App.—Houston [14th

---

[9] The evidence established that the power line was not located on the property and did not belong to Los Compadres.

[10] By its second issue, Los Compadres contends that appellees failed to request jury questions regarding Chapter 95's requirement that Los Compadres had actual knowledge and control. However, as we have concluded that Los Compadres failed to meet its initial burden of establishing Chapter 95's applicability, the burden never shifted to appellees, and we need not address this issue as it is not dispositive. *See* TEX. R. APP. P. 47.1.

In addition, Los Compadres argues in its reply brief for the first time that it was undisputed in the trial court that Chapter 95 applies. However, we need not address a new issue not raised by the appellant in the original brief. *Donaldson v. Tex. Dep't of Criminal Justice-Corr. Institutions Div.*, 355 S.W.3d 722, 727 (Tex. App.—Tyler 2011, pet. denied). Therefore, we decline to do so here, especially considering that Los Compadres did not state in its original brief that it was undisputed that Chapter 95 applied and asked us to determine whether it did apply. Specifically, Los Compadres' first issue stated, "Does Chapter 95 of the Texas Civil Practice and Remedies Code govern this suit, since Appellees seek to hold Los Compadres liable for personal injuries incurred while Appellees were working as subcontractors on Los Compadres' land?"

[11] "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

13

Dist.] 2009, no pet.) (citing TEX. R. CIV. P. 279). In other words, if the evidence conclusively established that Torres was Los Compadres' agent, then appellees were not required to submit this issue to the jury under Rule 279. *See id*. However, Los Compadres does not argue or address whether appellees conclusively established that Torres was an agent. *See id*. As the appellant, it is Los Compadres' burden to challenge the judgment on all possible grounds, and because it has not done so, it has not established its entitlement to reversal on the basis that appellees waived their vicarious liability theory under rule 279. *See id*.; *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) ("If a claim is established as a matter of law, no question must be submitted to the jury for consideration."). Accordingly, we cannot conclude that the trial court's judgment should be reversed on this basis. We overrule Los Compadres' third issue.

## V. CONFLICTING JURY FINDINGS

By its fourth issue, Los Compadres contends that the jury issued conflicting findings. Appellees claim that Los Compadres waived its complaint because it failed to object before the jury was discharged.

"When an irreconcilable conflict involves one jury answer that would require a judgment in favor of the plaintiff and another that would require a judgment in favor of the defendant, the conflict is fatal." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 509 (Tex. 2018). To properly preserve a complaint that there is a fatal irreconcilable conflict in the jury's verdict, the party "must raise that objection before the trial court

---

Conclusive evidence can be disputed evidence. *Id*. If a claim is established as a matter of law, no question must be submitted to the jury for consideration. *Brown v. Bank of Galveston*, 963 S.W.2d 511, 515 (Tex. 1998). Appellees claim that the evidence conclusively established that Torres was Los Compadres' agent.

14

discharges the jury." *Id*. at 518.

Los Compadres concedes that it did not object to the jury's alleged fatal conflicts prior to its discharge. *See id*. Therefore, error, if any, is not preserved for appeal. *See id*.; *see also Davis v. Vaughters*, No. 01-17-00612-CV, 2018 WL 5661317, at *5 (Tex. App.—Houston [1st Dist.] Nov. 1, 2018, no pet.) (mem. op.) ("Even were we to conclude that Davis has identified a conflict in the jury's answers, which we do not, it is well-established that 'to preserve error based on fatally conflicting jury answers, parties must raise that objection before the trial court discharges the jury.'").

In light of its failure to preserve this issue, Los Compadres requests that we remand the cause for a new trial in the interest of justice. It states in its reply brief that in *Menchaca*, a plurality opinion, three justices

> opined that irreconcilable jury responses did not constitute fundamental error, and concluded that an objection was required prior to the jury's discharge. Nonetheless, these justices voted with the majority to remand the case for a new trial in the interest of justice, because the Court's decision addressed confusion in the error preservation requirements for irreconcilable jury responses.

*See Menchaca*, 545 S.W.3d at 505. However, Los Compadres does not explain with legal argument and citation to applicable authority why it is entitled to a new trial in the interest of justice in this Court and how this Court has authority to do so when we do not have the same authority to remand in the interest of justice as the Texas Supreme Court. *See* TEX. R. APP. P. 38.1(i); *Wall v. State Farm Lloyds*, ___ S.W.3d ___, ___ No. 01-17-00681-CV, 2018 WL 6843781, at *5 (Tex. App.—Houston [1st Dist.] Dec. 31, 2018, no pet.) (refusing to remand in the interest of justice because it had not found error warranting reversal in the trial court's judgment and explaining that the rules for remand in the interest of justice are not the same in the Texas Supreme Court and the intermediate courts). We

15

overrule Los Compadres' fourth issue.

## VI.   OPEN AND OBVIOUS DANGER

By its fifth issue, Los Compadres contends that "the judgment cannot stand because the power lines posed an open and obvious danger, of which [it] had no duty to warn." Los Compadres argues that the "evidence conclusively established that the power line was plainly apparent."

"[W]hen one speaks of a condition as being open and obvious, the phrase means that there is no dispute in the evidence or facts which will charge [the injured party] with knowledge and full appreciation of the nature and extent of the danger." *Sun Oil Co. v. Massey*, 594 S.W.2d 125, 128 (Tex. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). If the injured parties are unaware that the visible power lines are energized, the power lines are not necessarily an open and obvious danger. *Id*. "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

At trial, Teran testified that he was unaware that the power line was energized, and on cross-examination, when Los Compadres' trial counsel asked if Teran knew the power line was energized, Teran replied, "No." Later, on cross-examination, Teran stated, "I didn't know—I didn't know that [the power lines] had energy." On cross-examination by Los Compadres' trial counsel, Valdez claimed that he did not notice the power line until the day of the accident and stated that he "never thought that [the power line] had energy." Los Compadres' trial counsel asked, "Well, did you ever discuss with anybody whether they had energy or not?" Valdez replied, "No, I—I thought they were not electrified until we were hit." Valdez testified that Paredes did not tell him anything about the power line.

16

Los Compadres cites evidence that it claims contradicts or conflicts with Valdez's and Teran's testimony; however, any conflicts in the evidence were resolved by the fact finder. *See City of Keller*, 168 S.W.3d at 820. Thus, because there is evidence that the appellees were unaware that the power lines were energized and that no one told them they were, we conclude that reasonable minds could have differed in their conclusions regarding whether the power line was an open and obvious danger. *See Sun Oil Co.*, 594 S.W.2d at 128 (explaining that the danger of the electrified power lines was not open and obvious because although the power lines were visible, there was no evidence that the injured parties knew that they were charged with electricity). Therefore, we cannot conclude that, as a matter of law, the danger was open and obvious solely because the power line was visible. *See id*. We overrule Los Compadres' fifth issue.

## VII. LEGAL AND FACTUAL SUFFICIENCY

By its sixth and seventh issues, Los Compadres contends that the evidence is legally and factually insufficient to support the judgment under Chapter 95. However, we have concluded that Chapter 95 does not apply; therefore, we need not address these issues as they are not dispositive. *See* TEX. R. APP. P. 44.1.

As a sub-issue to its seventh issue, Los Compadres claims that the evidence is legally and factually insufficient to establish that the power line caused the injuries because appellees could not state exactly how they were electrocuted. Specifically, Los Compadres argues that appellees were required to explain how the rebar contacted the power line and because they did not do so, the evidence is insufficient.

Los Compadres cites case law wherein the plaintiff could not establish that the complained-of item caused the injury. *See Summers v. Fort Crockett Hotel, Ltd.*, 902

17

S.W.2d 20, 26 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (concluding that the plaintiff could not establish that the height and design of a railing on a balcony caused him to fall because the plaintiff's theory of the occurrence was merely speculative and there was no evidence that it was faulty); *Tex. Dep't of Corr. v. Jackson*, 661 S.W.2d 154, 157 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (stating that plaintiff could not establish that a faulty tool belt was the cause of his injury and his mere speculation that the tool belt failed causing him to fall did not amount to circumstantial evidence that the tool belt caused his injury). However, here, although the men were not able to explain in precise detail how the power line hit the rebar, Torres, Valdez, and Teran all testified that the complained-of power line electrocuted them when it encountered the rebar. There is no dispute regarding whether the rebar contacted the power line in this case or whether that caused appellees' injuries. Therefore, considering the evidence in the light most favorable to the jury's verdict, we conclude there is some evidence supporting the jury's finding that the power line caused appellees' injuries. *See City of Keller*, 168 S.W.3d at 827 (establishing that when the appellant challenges the legal sufficiency of the evidence supporting an adverse finding on which he did not have the burden of proof at trial, the appellant must demonstrate that there is no evidence to support the adverse finding). Accordingly, the evidence was legally sufficient. *See id*. Moreover, after considering all of the evidence, we cannot say that the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We overrule Los Compadres' sub-issue.

18

## VIII. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed the
20th day of June, 2019.